CHARLES SPENCER, Appellee, v. W. N. TAGGART, Appellant.

Fraud: PECUNIARY INTEREST OF DEFENDANT: LIABILITY: EVIDENCE.
1 The gist of a charge of fraud is that the plaintiff has been deceived and suffered damage thereby, and the question of whether defendant may have lost or gained by the transaction is not controlling. In this action to recover money paid on the purchase price of land, because of defendant's misrepresentations concerning its character, the fact that defendant was acting in a representative capacity and forwarded the sum received to his principal, did not affect his liability.

**Same:** INSTRUCTION: PREJUDICE. Where the jury in an action for fraud in the sale of land could only have returned a verdict for plaintiff under the evidence, the error, if any, of an instruction assuming that defendant received that portion of the price paid, when he had in fact forwarded the same to his principal, was not prejudicial, on the theory that no prejudice would result to him by requiring him to return it.

*Appeal from Audubon District Court.*—HON. A. B. THORNELL, Judge.

MONDAY, DECEMBER 15, 1913.

ACTION for damages based on false representations on the sale of land. Defendant, as agent, induced plaintiff to purchase certain land of his principal by falsely representing the character of the land, thereby inducing plaintiff to pay defendant the sum of $600 as part payment on the purchase price.—*Affirmed.*

*Cosson & Ross* and *J. M. Graham,* for appellant.

*Matnz & White,* for appellee.

GAYNOR, J.—The defendant is the agent of the Stewart & Mathews Company, Limited, of Canada, and, as such, was engaged in the business of selling real estate for said company. He had his office at Audubon, Iowa. The plaintiff claims: That the defendant solicited him to purchase certain real estate of said company, through his agency, and, at the time, represented to the plaintiff that the land was of first-class quality, free from rocks and gulches. That in the six hundred and forty acres there was not to exceed ten acres of waste land. That he had examined the land and spoke from his own knowledge and told the plaintiff that he would

*1. FRAUD: pecuniary interest of defendant: liability: evidence.*

find the land just as he represented it; that plaintiff, at the time, had not examined the land, and had no means of knowledge or information, concerning the condition and quality of the land, except such as was given him by the defendant. That on the 3d day of October, 1909, the plaintiff, relying upon the statements of the defendant, and believing the same to be true, entered into a contract with the defendant, as agent of said company, for the purchase of section 7, township 43, M. 3, in the province of Saskatchewan, Canada. That the stipulated price was $7,040. That he was induced to enter into said contract by reason of the statements and representations of the defendant aforesaid, touching the land. That he made a payment upon said contract, about said time, of $600. That defendant, at the time he made said representations, knew that they were false and made them with the express and specific intent of defrauding the plaintiff, and to induce him to enter into said agreement of purchase. On the 15th day of February, 1910, the plaintiff made an examination of the above-described real estate. That, upon such examination, he found the land to be rocky, sandy, and cut up and traversed by a large and deep coulee, which cut into and passed through three of the four quarters of said section and rendered the same greatly reduced in value for agricultural purposes. That there were at least one hundred acres of waste land on said section. That all the representations made by defendant aforesaid were false. Wherefore he asked judgment against the defendant for $600.

The defendant, for answer to plaintiff's petition aforesaid, states that he denies each and every allegation therein contained, except as hereinafter expressly admitted.

He admits that on or about the 3rd day of October, 1909, he was acting as the agent of Stewart & Mathews Company, Limited, and was engaged in the business of selling Canadian real estate at Audubon, Iowa. That on or about the 12th day of October, 1909, the plaintiff made an application for the purchase of land, in writing, as follows: 'Application for the

purchase of land. Audubon, Iowa, October 12, 1909. Stewart & Mathews Co., Ltd., 305 Jackson St., St. Paul, Minn. The undersigned hereby applies to purchase subject to the usual conditions of the company, the following described land, all of section seven (7), in township forty-three (43), range fifteen (15), west of the third meridian, containing 640 acres at $11.00 per acre, total consideration being $7,040.00, and inclose herewith $600.00 in part payment of the down payment and agrees to pay $2,000.00, the balance of the down payment on March 1, 1910, and the balance of the purchase price in five equal annual consecutive installments with interest at 6 per cent per annum, commencing October 1, 1909. If this application is accepted, the undersigned will execute a contract for the purchase of the above-described land when requested. If the undersigned fails to complete the down payment in the time specified, or to execute the contract, he shall forfeit the payment made thereon as liquidated damages. If for any reason this application is not accepted by the company, the money paid thereon shall be returned to the undersigned. This application is made after a careful reading and full understanding of the same, and the undersigned agrees to rely entirely upon his own knowledge of the land and not upon any representations made by others as to its character or value. All remittances must be made in favor of Stewart & Mathews Co. Ltd., either by draft, certified check, or express order. Make papers in name of Charles Edgar Spencer. P. O. Audubon County of Iowa, State, Occupation, farmer. Charles Edgar Spencer.' The defendant expressly denies that he made to the plaintiff any representations which were false, fraudulent, or misleading.

Plaintiff testified substantially as follows:

I am the plaintiff in this case. I have known Mr. Taggart for four years. I have talked with him about Canada lands. I was in his office in Audubon, Iowa, the latter part of September, 1909. He said he had for sale a large tract of land near North Battleford, Saskatchewan, for which he was asking $11 per acre. He said it was good land. About two weeks subsequent, I was at his office and talked with him in reference to Canada land. He said it was all sold except three or four pieces. I asked him what kind of land it was. He said that he had one extra fine section left, section

7—43—15. Told him that I did not like to buy without seeing it. He said that he would explain that to me, and that I would find it just as he said it was. He said that there was a coulee in it. I asked him what a coulee was, and he said that it was just a small ditch, like we have here. He said that there was not to exceed 10 acres in the coulee. He said that he had been upon the land; that there were a few rocks upon the edge of the coulee. I told him that I did not want anything that was near the river or it was likely to be sandy and rocky, and he said that this was a mile from the river land, back a mile from it. He did not say that there was any branches to the coulee. I did not know what a coulee was at that time. I relied upon and believed the statement of Mr. Taggart at that time. Went up the following February to see the land, and found a great deep gulch or canon through the land. It entered the section in the northeast corner and ran to the southwest, and passed out of the section at the southwest corner. The coulee was 350 or 400 rods long, and has an average width of perhaps thirty rods. Found a smaller coulee branching from the northwest from the main coulee. It is fifty rods or sixty rods long and from twenty to twenty-five rods wide, with walls forty to fifty feet, I should judge. Would judge there is eighty acres in the main and branch coulee. Found three corners of this section. In my judgment the fourth corner was in the Saskatchewan river. The corner down by the river was low and brushy, and the bank leading to this flat was very steep, about forty or fifty feet high. This flat was covered with willows and scrub cottonwood. There is about thirty acres in this flat, and it is no good for anything. Saw Mr. Taggart at his home in Audubon when I returned. Told him that I would not take the land, for it was not what he told me it was. Told him that he said it was a small ditch, and it was a regular canon. Taggart said that he was very sorry I did not like it, and that was all. I told him that it was not a mile from the river, and he did not deny it. Told him I wanted my money back. He never had paid me. At the time I signed the application, I bought a draft for $600 and gave it to Mr. Taggart. The draft was payable to Stewart & Mathews. Mr. Taggart mailed it to the firm. The land was owned by Stewart & Mathews.

As to the character of the land in controversy, the testi-

mony of the plaintiff is corroborated, in every respect, by the testimony of other witnesses introduced by the plaintiff on the trial.

The only testimony offered by the defendant was as follows: "My name is E. N. Taggart, and I am the defendant in this case. In the fall of 1909, I was in the real estate business, selling Canadian estate for Stewart & Mathews Company, of St. Paul, Minn. I had a conversation with Mr. Spencer some time in October, 1909. He said he would buy the whole section if he could buy it. We made out the application and Mr. Spencer signed it."

There is no complaint of the instructions given by the court, except that, in instructing the jury, the court said:

Now, it appears from the evidence, without conflict, that in October, 1909, the defendant was the agent of Stewart & Mathews Company, and was engaged in selling land for said company; that, about said time, he solicited the plaintiff to buy, and the plaintiff did agree to purchase, 640 acres of land, buying the land described in the evidence, and paid defendant the sum of $600 on the purchase price. (And further, in stating to the jury) that, if the plaintiff is entitled to recover, the measure of his recovery will be the sum of $600, which the evidence shows, without conflict, was paid by plaintiff to the defendant as part of the purchase price of the land.

2. SAME:
   instruction:
   prejudice.

Complaint is made that, through this instruction the court assumed that the plaintiff had paid to the defendant the sum of $600, while the evidence shows that the plaintiff bought a draft for $600 and gave it to Taggart, and that the draft was made payable to Stewart & Mathews Company, and sent by Taggart to them. It is claimed by the defendant that this was prejudicial for the reason that it assumed that defendant had received the money and that the jury might be led to believe that no prejudice could result to him, by requiring him to return it, if he had received it. There is no question that this draft for $600 was delivered by the plain-

tiff to the defendant; no question but that he obtained this draft by reason of the representations made by him to the plaintiff. Further in the application which the defendant took from the plaintiff, as hereinbefore set out, he treated the draft as money, and in this application it is said, ''Inclosed herewith find $600 in part payment down.''

Now as a matter of fact, if the record had shown that, instead of a draft, the plaintiff had delivered to the agent $600 in cash, would his liability be less, if the evidence further disclosed that he had remitted the $600, so wrongfully received by him to his principal? The question is not whether the defendant receives any benefit from his fraud, but whether the fraud has worked an injury upon the plaintiff, and the amount of the injury so wrought by the fraudulent practice. In this case, it was clearly $600.

There was no evidence offered by the defendant disputing any material fact relied upon by the plaintiff for recovery. There is no question but that the defendant received this draft as money, and in part payment for the purchase price of the land. So far as this controversy is concerned, the question of benefit to the defendant is not a proper element, only in so far as it tends to prove, or disprove, the allegations of fraud; as tending to show a lack of motive on the part of the defendant to perpetrate the fraud. But the evidence of the fraud is so clearly put forth in this record, and the fact so well established, and nowhere controverted, that this view of the evidence leaves this fact with so little probative force upon that issue that it cannot be seriously considered. The gravamen of the charge of fraud is that the plaintiff was deceived thereby to his injury, and not whether the defendant has lost or gained. This question has been discussed and settled in numerous cases. See *Leonard v. Springer*, 197 Ill. 532 (64 N. E. 299); *Carpenter v. Wright*, 52 Kan. 221 (34 Pac. 798), in which the rule is recognized that a person making false representations may be liable for the loss occasioned, although he may have had no direct interest in the transac-

tion, nor received any of the consideration. In *Leonard v. Springer, supra,* the court said: "In an action for damages for deceit in placing on the market valueless notes in pursuance of a scheme to defraud, it is immaterial to the defendant's liability that he did not obtain any of the plaintiff's money; he being liable, not because of benefit to himself, but for the wrongful act, and the consequent injury to the plaintiff." See, also, supporting this rule, *McGibbons v. Wilder,* 78 Iowa, 531, and cases therein cited.

However, we are satisfied that, under the whole record, the plaintiff was entitled to the verdict he received, and that a verdict under this record other than was rendered would be so against the undisputed evidence that it could not be sustained. We feel satisfied that the defendant was not prejudiced thereby, for the reason that in no event was he entitled to recover. As justifying this conclusion, see *Alline v. City of Le Mars,* 71 Iowa, 654; *Newell & Co. v. Martin & Wagner,* 81 Iowa, 241. In this case it was said: "While the verdict may have been rendered under an erroneous instruction, it was demanded by a correct one, and the evidence of the case to which it is applicable." See, also, *Middleton v. Middleton,* 31 Iowa, 153; *Blair Town & Lot Co. v. Hillis,* 76 Iowa, 249. In the last case the court said: "The instruction was not correct, because there was no evidence that the plaintiff agent knew anything of the application intended by the defendant. But the admission of the evidence of the defendant's intention not communicated to the plaintiff, and a part of the charge above referred to, was without prejudice to the plaintiff. We say this because in our opinion the jury, upon the undisputed facts, could have found no other verdict than that they did find."

Under the whole record, we find no error, and the case is *Affirmed.*

WEAVER, C. J., and DEEMER, WITHROW, EVANS, and PRESTON, JJ., concur.