FARMERS' NATIONAL BANK, Appellee, v. E. R. HATCHER et al., Appellants.

GUARANTY: Delivery—Conditional Delivery—Evidence. The delivery of a guaranty to the guarantee by those signing the same with the ''hope,'' on the part of those signing, that another named party would ultimately sign the same, does not constitute the delivery a conditional one.

EVIDENCE: Opinion Evidence—Conclusion—Reliance on Guaranty. Whenever the reason operating to induce a given action by a party is a material consideration in determining rights, it is competent for such party to testify thereto. So *held* where a guarantee was permitted to testify that he relied on the guaranty in making loans.

GUARANTY: Construction—Construction of Signature. A guaranty indorsed on a note with the signature, ''Ia. Mfg. Co., A. Updegraff, Pres.,'' is, presumptively, the guarantee of the Iowa Manufacturing Company.

**EVIDENCE: Parol as Affecting Writing—Capacity in Which Party 4 Signs.** Between the original parties, parol evidence is admissible to show that an instrument signed, "Ia. Mfg. Co., A. Updegraff, Pres.," is solely the act of the corporation.

*Appeal from Mahaska District Court.*—HENRY SILWOLD, Judge.

THURSDAY, MAY 11, 1916.

ACTION on a written guaranty under which defendants are alleged to have become indebted on a promissory note resulted in judgment as prayed. The defendants appeal.— *Affirmed.*

*Malcolm & True* and *Irving C. Johnson,* for appellants.

*Burrell & Devitt* and *Lacey & O'Brien,* for appellee.

LADD, J.—I. The plaintiff acquired, at about the time of its date, a promissory note in words following:

"Billings, Montana, May 1st, 1910.    $2,000.00

"Three months after date, for value received, we jointly and severally promise to pay to the order of Farmers' National Bank, Oskaloosa, Iowa, two thousand and no|100 dollars with interest at eight per cent. per annum from date until paid and with attorney fees in addition to other costs in case the holder is obliged to enforce payment at law.

                    "Billings Mutual Heating Co.
                        "By C. O. Myers, Mang.
                        "A. B. La Mott, President.
"Payable at First National Bank, Billings, Montana."

On the back was endorsed:

"Protest waived. For value received we guarantee the payment of the within note and hereby waive protest, demand and notice of non-payment.

                        "Ia. Mfg. Co.
                    "A. Updegraff, Pres."

This note was executed in renewal of one for like amount to the Iowa Manufacturing Company, which it negotiated to the plaintiff with like guaranty thereon. It was acquired in reliance on such guaranty and the general guaranty of defendants in words following:

"Oskaloosa, Iowa, 3-30-07.

"Farmers' Nat'l Bank, Oskaloosa, Iowa. Gentlemen: We, the undersigned, being stockholders and directors of the Iowa Mfg. Co., a corporation, do hereby jointly and severally as individuals guarantee the payment of any and all future obligations of the said Iowa Mfg. Co., which may be contracted or owing to the Farmers' National Bank of Oskaloosa, Iowa, to the extent of Six Thousand ($6,000.00) dollars.

"Frank E. Baker,
"A. Updegraff,
"E. R. Hatcher."

Appellants contend that this last instrument never became effective, for that, as is alleged, it was left with plaintiff for the signature of F. J. Page, who refused to sign. This issue was submitted to the jury; but in our opinion, it conclusively appeared from the evidence that the parties intended the instrument to become binding on delivery, and the matter of conditional delivery was an afterthought. The defendants and one F. J. Page were directors of the Iowa Manufacturing Company. Baker, in its behalf, applied to the plaintiff for a loan, which the bank undertook to make on condition that the note given by it be guaranteed by the directors individually. To avoid the necessity of signing each note, defendants, with Page, prepared and signed a form of guaranty, March 27, 1907, and gave it to the bank; but a day or two later, the cashier advised Baker that the instrument was not in the form desired, and, when Baker called at the bank, gave him a form that was satisfactory. Baker took it away and on March

1. GUARANTY: delivery: conditional delivery: evidence.

30th returned with it, signed by defendants. What then occurred is best described by the parties the cashier and Baker. The former testified:

"He [Baker] brought that guarantee in, dated on March 27th, 1907, but I didn't let him have money on it. I said that this form is not satisfactory, that I have a form that you can take with you and prepare one from it, and have it signed and bring it in and I will let you have the money on that. He took that form and in a few days brought it back with three names signed to it. That was on March 30th, 1907, and at that time I let him have $4,000. Mr. Baker brought it in and handed it to me through the cashier's window and says, 'Is that satisfactory?' And I said, 'Yes.' And I says, 'You just have three names on it,' and he says, 'Yes.' I says, 'Well, that is all right,' and handed him the original exhibit 'A,' the first guaranty, and he says, 'You just keep that,' and he tossed it back through the window and he says, 'Just keep that; keep them both.'"

Baker swore that Davis "made no objections to the form of the guarantee when I left it with him. About two or three days afterwards he called me on the 'phone and asked me to come up to the bank and I went up and he told me he had submitted that guarantee to their attorney and that the attorney preferred another form and he asked me if I would sign that form. He did not offer to give me the first form and did not object to loaning me money on the first one. The form of the second guarantee I took out of the bank at that time. I told him I would ask the men to sign the form that he presented. I went back to the officers and explained to them and we held a directors' meeting and a form was made up and three of us signed it. I took the second guaranty to the bank. I left the second guaranty with Mr. Davis because it was the form he wanted and we wanted to accommodate him if we could. We got $4,000 March 30th, when the second guaranty was delivered. Q. Now, when you procured the signature of Mr. Hatcher and Mr. Updegraff upon the guaranty No. 1,

to which your name is signed, what, if anything, did you say to them about signing this second paper? A. We discussed the form that had been submitted by Mr. Davis and saw no objection to it and decided that we would sign it; that took place at a meeting and we signed it one at a time until it came to Page, and he refused to sign it. . . . I took it and asked them to sign it and the three of us, Mr. Updegraff, Mr. Hatcher and myself, signed it, but Mr. Page refused to sign. I took it back to Mr. Davis as near as I can remember on March 30th, 1907. I told him that there was the form he had given me and that Mr. Page had had a change of heart and said he would not sign it, but that I hoped he would sign it at a later day, and Mr. Davis said, 'Well, I will just attach it to the other paper,' and I left it there in hopes that Mr. Page would sign it at a later date, but he never did; I never could persuade him to sign it. Mr. Davis did not at any time hand me that first guarantee to take away and keep the second one, and did not return to me the first guarantee or offer to return it. . . . Q. And as a matter of fact you wanted Mr. Davis to keep the first guarantee so as to hold Mr. Page on it and divide the responsibility, did you? A. Yes, sir. Q. Well, now, Frank, you were acting for Mr. Updegraff, your father-in-law, and for Mr. Hatcher and yourself in taking this paper to the bank, this second guarantee? A. Yes, sir. Q. And after you took the paper to the bank, Rufus Davis gave you— how much was it, $4,000, the first time? A. $4,000 the first time. Q. And you took that money and it was turned in to the Iowa Manufacturing Company? A. That is right. Q. And Mr. Hatcher and Mr. Updegraff and yourself knew about the receipt of the money? A. They probably did.''

This is all the evidence bearing on the issue whether the delivery of the guarantee to the bank was conditioned on Page's signing. It was not conflicting. The guarantee was turned over to the bank unconditionally, in accordance with the wishes of those signing it. While Baker suggested that

Page might sign it later on, neither intimated that the bank should retain it for that purpose or that it should not become binding until then. Knowing of Page's refusal to sign and of the bank's demand for a guaranty in the form of that signed by defendants, the instrument was taken to the bank by Baker with the acquiescence of the other two signers and delivered, "because it was in the form he (Davis) wanted and we wanted to accommodate him if we could,"—unconditionally.

II. The cashier, Davis, was asked whether, in making different loans to the Iowa Manufacturing Company, he relied on this guarantee. The objection that the inquiry called for an opinion and conclusion of the witness was overruled, and rightly so. Whether he did so rely was a matter concerning which he alone could give direct testimony; and even though his answer may have been in the nature of a conclusion, it was proper to receive it for what it was worth when weighed in connection with all the facts and circumstances bearing on that issue. As said in *City National Bank v. Jordan,* 139 Iowa 499:

**2. EVIDENCE: opinion evidence: conclusion: reliance on guaranty.**

"Whenever motive or intent or the reasons operating to induce a given action by a party are material considerations in determining rights involved in any litigation, it is competent for such party to testify thereto; and the fact that such testimony may partake of the nature of an opinion or a conclusion, or may relate to some ultimate fact or facts upon which the jury must pass in reaching their verdict, works no exception to the rule."

III. Exception is taken to the 12th instruction, wherein the jury was told that the promissory note in suit was the obligation of the Iowa Manufacturing Company. Appellant insists that it is not such obligation, for that: (a) Its name is not to be found in the body of the note instrument purporting to bind it; (b) the signature does not appear

**3. GUARANTY: construction: construction of signature.**

to be attached by any person; and (c) no promise on the part of said company is recited therein. As contended, the proper method of attaching the name of a corporation is the writing of its name by some officer authorized to do so. The evidence shows that the signing was so done, although the word "by," preceding the name of the president, was omitted. Parol evidence that the transaction was in behalf of the Iowa Manufacturing Company, and that A. Updegraff was president and signed its name thereto, was introduced without objection. Even in the absence of such evidence, the guaranty endorsed on the note purports to be that of the Iowa Manufacturing Company. *Heffner v. Brownell*, 70 Iowa 591; *Second National Bank v. Martin*, 82 Iowa 442. See *Lacy v. Dubuque Lumber Co.*, 43 Iowa 510. Moreover, the previous decisions

4. EVIDENCE: parol as affecting writing: capacity in which party signs.

of this court, holding that parol evidence showing that, as in this case, the party signing was president of the company and that the transaction was solely for its benefit and was intended to bind it alone, is inadmissible, are not in harmony with the views of this court as now constituted. On the contrary, we are unanimously of opinion that the dissenting opinion of Kinne, J., in which Granger, J., concurred, in *Mathews v. Dubuque Mattress Co.*, 87 Iowa 246, stated the better rule. As there said:

"It may be shown, in an action between the original parties to the instrument, that it was not so intended, and that, in fact, the real intention was to bind the principal whose name was disclosed in the signature of his agent, or who was well known by the payee to be the real party to be bound. . . . Sometimes the doctrine is stated that, where words may be either descriptive of the person or indicative of the character in which he contracts are affixed to the name of the contracting party, *prima facie* they are descriptive of the person only; but the fact that they were not so intended by the parties, but were understood as determining the character in

which the party contracted, may, as between the original
parties, be shown by extrinsic evidence."

The subject is so fully considered by Judge Kinne that we
need only indicate our approval of the views expressed, as was
done in *Hanna v. Wright,* 116 Iowa 275, and *Western Wheeled
Scraper Co. v. Stickleman,* 122 Iowa 396. The matter is one
of practice, and there seems no tenable reason for transferring
the cause to the equity side of the calendar, there to ascertain
a fact subsequently to be made use of in the trial at law,
instead of passing it with other issues in the latter action. As
said by Kinne, J.:

"By signing, as he did, with 'Pt.' after his name, the
question is at once suggested, did he or did he not sign this
note in an official capacity? To determine this fact, extrinsic
evidence may be resorted to. The doctrine announced in the
majority opinion seems to be based on the prior holdings of
this court, and special stress is given to the fact that in *Lee
v. Percival,* 85 Iowa 639, the court has furnished a means of
escape from the effect of the rule, which is purely technical,
by means of reformation of the instrument in equity. No rea-
son is suggested why a party should be driven to a court of
equity except to avoid the necessity of overruling bad prece-
dents. The rule announced in the cases cited in the majority
opinion is, as I believe, contrary to the trend of modern deci-
sions, is well calculated to effectuate injustice, and is indefen-
sible from any point of view."

In the case at bar, even though the name of the corpora-
tion does not appear in the body of the note or guaranty, the
guaranty was signed by it and in a transaction of the com-
pany. In reliance on its guaranty of the original note, the
proceeds of its sale to the bank were turned over to its secre-
tary, and this guaranty is of the payment of a renewal of that
note. It is an obligation owed to the bank, and we have not
been able to discover any reason for excusing defendants from
payment precisely as they agreed. Other rulings are dis-
cussed, but there is no occasion for their review, even if some

were erroneous; for plaintiff, in any event, was entitled to recover. *Spencer v. Taggart*, 162 Iowa 564; *Scott v. Wilson*, 157 Iowa 31.—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.