F. L. Foley, Appellee, v. F. B. Mathias, Appellant.

No. 40351.

November 18, 1930.

*Birdsall, McGrath & Archerd,* for appellant.

*Frank D. Riley* and *E. A. Baldwin,* for appellee.

Grimm, J.—On January 23, 1929, the plaintiff filed in the district court of Wright County, Iowa, his petition at law, in which he alleges that, on the 13th day of August, 1928, the defendant entered into a contract in writing with the plaintiff, in words and figures as follows:

"In consideration of the work, co-operation and aid given by F. L. Foley in obtaining a lease from Montgomery Ward & Co., for my property in Webster City, Iowa, I, F. B. Mathias, hereby agree, that in case said lease is completed to pay F. L. Foley two and one-half % (2½%) commission of the rental for obtaining the said lease with Montgomery Ward & Co. Commission to be paid when lease is signed by both parties, said commission to be mailed to F. L. Foley c/o Dr. J. J. Foley Fort Dodge, Iowa."

The plaintiff pleads performance of his part of the contract, and that a contract of lease was entered into by the defendant with Montgomery Ward & Company, and that, as a·result there-of, he is entitled to his commission, under his written contract. The defendant interposed several defenses, the principal one of which·is that, at the same time the plaintiff entered into the written contract with the defendant, the plaintiff also entered into a similar contract with one Hunter, who also had property in Webster City, Iowa, available for leasing by Montgomery Ward & Company; that on that account it is claimed by the defendant, in substance, that there was a dual employment of the plaintiff; and that, inasmuch as the agent cannot serve two principals without the intelligent consent of both, the plaintiff cannot recover.

I. It is the principal contention of the appellant that the facts in this case bring it under the well recognized and firmly established rule that an agent cannot serve two principals without the intelligent consent of both, and that, if he undertakes to do so, compensation cannot be recovered. In support of this contention the following cases are cited: *Casady v. Carraher*, 119 Iowa 500; *Rodenkirch v. Layton*, 189 Iowa 430, 440; *Bell v. McConnell*, 37 Ohio St. 396 (41 Am. Rep. 528); *Jansen v. Williams*, 36 Neb. 869 (55 N. W. 279); *Strawbridge v. Swan*, 43 Neb.·781 (62 N. W. 199); *Steele v. Crabtree*, 130 Iowa 313; *Preston v. McClelland*, 196 Iowa 13; *Rice v. Wood*, 113 Mass. 133 (18 Am. Rep. 459); *Young v. Hughes*, 32 N. J. Eq. 372, 384; *Lemon v. Little*, 21 S. D. 628 (114 N. W. 1001); *Loots v. Knoke*, 209 Iowa 447.

In attempting to apply the doctrine in these cases to the case at bar, the appellant overlooks the fact that this rule applies in cases where the agent represents both parties to a contract. If the record in this case showed that the plaintiff was at the same time the agent of both the defendant in this case and Montgomery Ward & Company, in that event the rules affecting dual agency would apply. There is, however, in this record no contention, nor is there any proof, that Foley, at the time of the making of these contracts with the defendant and Hunter, was in the service of Montgomery Ward & Company. True enough it is that, in .a sense, the defendant and Hunter were rivals for a lease with Montgomery Ward & Company.

The situation in this case is analogous to that which arises when a real estate agent has listed with him a number of houses for rent, and a lease for one of them is made to the customer of the real estate agent. Every owner of the houses is a rival of every other owner for the lease with the real estate agent's customer; but can it be said that, because the real estate agent has several houses listed with him, therefore the real estate agent cannot recover his commission for leasing one of them to one of his customers without the intelligent consent of both? Manifestly not.

If the rule contended for by the appellant in this case did obtain, as is well stated by the appellee, no real estate agent in Iowa could have more than one house listed in his office at one time if he expected to recover his commission for leasing the house. If the plaintiff had represented Montgomery Ward & Company, he could properly have dealt with the owner of every available piece of property in Webster City for a lease with Montgomery Ward & Company, and demand his pay from Montgomery Ward & Company for having procured a lease on any one of them. In that event, there would be no dual representation, because plaintiff would be representing Montgomery Ward & Company only. On the other hand, Foley could well represent the owner of every available piece of property in Webster City in his efforts to secure a lease for some one of them with Montgomery Ward & Company, and just so long as the plaintiff did not, at the same time, represent Montgomery Ward & Company, the dual agency rule would not apply.

There is in this contract no agreement to exclusively represent the defendant in an effort to secure a lease with Montgomery Ward & Company. The record shows without dispute that the plaintiff rendered ''work, co-operation and aid'' in securing the lease with Montgomery Ward & Company. It appears without dispute that the plaintiff made a plat of the business district of Webster City, showing the approximate rentals of the various buildings, and gave to Montgomery Ward & Company his opinion of the relative value of the various locations. He had a picture of defendant's property taken; he secured the blue prints of the building, and forwarded all this information to the real estate department of Montgomery Ward & Company. He conducted correspondence with them, and, between the time of the making

of his contract with the defendant and the day of the execution of the lease, the plaintiff was in Chicago five different times, in consultation with representatives of Montgomery Ward & Company. Finally, a lease for the defendant's property was signed.

The defendant admits that he knew, on the day he signed the contract with the plaintiff, that the plaintiff was dealing with Hunter in reference to Hunter's building in Webster City. The defendant testified, among other things, as follows:

"I knew that he [plaintiff] was negotiating with Hunter and dickering with that building. * * * I went up to the architects with him [plaintiff], to get the plans and blue prints of the Hunter building. I knew he was after the plans for the Hunter building."

The defendant contends, and the plaintiff admits, that, at the time the contract in controversy was made, plaintiff told the defendant that he, the plaintiff, would do all he could to have the defendant's building chosen, rather than the Hunter building. There is no evidence whatever in the record even tending to show that the plaintiff did not do everything he could to have the defendant's building chosen, rather than Hunter's. At all events, the defendant's building was chosen.

The facts that the contract was entered into, that Foley gave "work, co-operation and aid" in securing the lease, and that the lease was secured and executed, are without dispute in the record. Under all the facts appearing in this record, the plaintiff was entitled to a directed verdict in his behalf. He did not ask it. The jury, however, returned a verdict for the plaintiff.

Many errors are alleged upon this appeal by the appellant; but it is the established rule in this state that, where a plaintiff is entitled to a directed verdict, though he did not ask for it, errors as to other issues are without prejudice.  *Mulroney Mfg. Co. v. Weeks*, 185 Iowa 714. As was said by this court in *Brown v. Hunt & Shuetz Co.*, 163 Iowa 637:

"That this court will not reverse a judgment because of errors in charging a jury, where, on the whole record, a different judgment or verdict could not have been sustained, is well settled."

164

See, also, *Blair Town Lot & Land Co. v. Hillis,* 76 Iowa 246 ; *Alline v. City of Le Mars,* 71 Iowa 654; *Spencer v. Taggart,* 162 Iowa 564; *Dye Produce Co. v. Davis,* 202 Iowa 1008; *Blakely v. Cabelka,* 207 Iowa 959.

It would serve no good purpose to consider the various errors claimed by the appellant. It follows that the case must be, and is—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.