MRS. WILLIAM H. YOUNG, Administratrix, Appellant, v. IRVIN (ERVIN) I. CLARK, Appellee.

No. 44709.

MAY 2, 1939.

REHEARING DENIED SEPTEMBER 29, 1939.

Putnam, Putnam, Fillmore & Putnam, for appellant.

Parrish, Guthrie, Colflesh & O'Brien, for appellee.

STIGER, J.—The collision in which William H. Young received injuries resulting in his death occurred at an intersection about three miles west of Huxley. Just prior to the accident, Mr. Young was driving his Terraplane west on the east and west road, approaching the intersection from the east. Gerald Handley, 19 years old, was riding with Mr. Young. Defendant's gravel truck, driven by Joie Davis, was approaching the intersection from the south.

We will first consider defendant-appellee's proposition that errors, if any, in the instructions relied on by appellant for reversal, are without prejudice for the reason that plaintiff's intestate was guilty of contributory negligence as a matter of law and the trial court erred in overruling appellee's motion for a directed verdict.

Appellee claims that Mr. Young was guilty of negligence per se because he did not have his automobile under control and did not reduce its speed to a reasonable and proper rate when approaching and traversing the intersection as required by section 319, chapter 134, Laws of the 47th General Assembly. Section 348 of said chapter 134 provides that the driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway. Appellee also contends that the truck entered the intersection first and plaintiff was guilty of negligence per se because he failed to yield the right of way.

Gerald Handley was the only witness for plaintiff who

testified about the circumstances of the accident. The witness testified that he and Mr. Young first saw the truck when they were about 100 feet east of the intersection and at that time it was "further away" from the intersection than the Terraplane; that the Terraplane and truck were being driven at a speed of from 40 to 45 miles per hour; that Mr. Young began to slow down at the intersection and when he entered the intersection was driving on the north side of the east and west road at a speed of about 30 to 35 miles per hour; that when Young again saw the truck the Terraplane was about south of the fence post in the northeast corner of the intersection and the truck was west of the fence post in the southeast corner of the intersection, entering the intersection from the south; that Young applied his brakes when he entered the intersection, skidded, and made a turn to the northwest; that the Terraplane hit the truck when the Terraplane was rounding the corner and "going practically north".

Handley further testified that the Terraplane *did not reach the west side of the intersection* but made the turn to the north before the impact and that the automobile was "practically straightened out and going north" at the moment of impact which, he states, occurred on the north and south road about west and a little north of the northeast fence post. The testimony of this witness is inconsistent and irreconcilable with the undisputed physical facts.

A witness for plaintiff stated that he observed skid marks made by the Terraplane about 10 to 15 feet long on the north side of the east and west road which ended at a point slightly to the *west side of the intersection*, the marks curving to the northwest. After the collision, the truck went northwest about 6 or 7 feet into the ditch in the northwest corner of the intersection, having turned over on its right side and facing to the northwest. The rear end of the truck was a few feet into the highway on the northwest part of the intersection and the front end was in the ditch a short distance beyond the corner fence post in the northwest corner of the intersection. There was a pile of gravel in the ditch adjacent to the highway in the northwest corner of the intersection.

There were skid marks in northwest sector of the intersection about 8 inches wide and quite deep extending east or southeast

from the rear wheels of the truck for a distance of about 6 to 8 feet.

The above undisputed physical facts show that the collision occurred in the north part of the northwest sector of the intersection and that the collision did not, as claimed by Handley, occur in the northeast portion of the intersection on the north and south road after the Terraplane had "rounded the corner".

The frame of the truck was reinforced by a steel fishplate three quarters of an inch thick. The truck was hit about in the middle and the east frame was bent westward about 18 inches and damaged to such a degree that it could not be repaired. The motor and rear axle were pushed west 12 inches and the truck was otherwise seriously damaged. It was struck with such force that it almost immediately turned over on its right side.

The engine of the automobile was broken off at the flywheel housing and it was damaged to such an extent that it was sold for junk for $50.

After the impact, the Terraplane, under its own momentum, went from the northwest part of the intersection in a northeasterly direction and came to a stop in a ditch on the east side of the north and south road about 100 feet north of the intersection. Mr. Young, who died a few seconds after the collision, was found with his feet on the clutch and brake pedals which were pressed down to the floor of the car and his feet were covered with about 10 inches of sand.

The Terraplane left skid marks which began east of the truck lying in the ditch and on the west side of the north and south road and went in a northeasterly direction to the place the car went in the ditch on the east side of the north and south road. These marks show that the right wheels of the Terraplane were on the crown of the north and south road when it started from the truck on its northeasterly journey to the ditch.

The physical facts show that Mr. Young did not apply his brakes until he was in the intersection and within 10 or 15 feet of the truck; that the truck was in the northwest sector of the intersection when struck by the Terraplane going in a northwesterly direction; that the Terraplane was traveling at a speed so great that the 16,000-pound truck almost immediately turned over on its right side and its reinforced frame damaged beyond

repair; that after the impact, the automobile, after hitting the truck almost head-on, went under its own momentum 100 feet with the foot brakes locked.

Mr. Handley must have been mistaken when he testified that Mr. Young slowed down from a speed of 40 to 45 miles an hour to 35 to 30 miles per hour as he approached the intersection; that the Terraplane was going almost straight north when the collision with the truck which was also traveling north occurred, and he also must have been mistaken when he stated that the accident occurred in the northeast portion of the intersection when he "had practically rounded the corner". These cars did not sideswipe each other. The terrible consequences of the accident were caused, as shown by the physical facts, by the Terraplane striking the truck with appalling violence.

Exhibits justify the conclusion that the truck was struck by both the left and right front end of the Young car.

The truck, loaded with gravel, weighed 16,000 pounds. South of the intersection, about one-quarter mile, there is a railroad crossing which is rough and substantially higher than the highway. This road was not well graded and from the crossing to the intersection it was spongy and also rough in places. The east and west road was a graded, graveled highway.

Plaintiff's witness, Mr. Handley, was not only opposed by disinterested witnesses for defendant who testified Mr. Young was driving at a speed of 70 miles per hour, but it is also contradicted and refuted by undisputed physical facts which demonstrate that the witness must have been mistaken in his statement that Mr. Young was driving at a speed of from 40 to 45 miles per hour and slowed down as he approached the intersection to a speed of 30 miles an hour and that the collision occurred in the extreme northeast portion of the intersection.

After a careful reading of the transcript, we are convinced that reasonable minds can arrive only at the conclusion that Mr. Young, in approaching and traversing the intersection, did not have his car under control and was traveling at a rate of speed that made it impossible for him to control his car; that the Terraplane approached and entered the intersection at a far greater speed than the truck; that the truck entered the intersection first and Mr. Young failed to yield the driver of the truck the right of way. The decedent, in violating the statutes, was guilty of negligence per se which contributed

directly to his injuries and death and appellee's motion for a directed verdict should have been sustained.

Though the trial court may have committed error against appellant, such error is without prejudice because appellee was entitled to a directed verdict. See Thompson v. Butler, 223 Iowa 1085, 274 N. W. 110; Foley v. Mathias, 211 Iowa 160, 233 N. W. 106.—Affirmed.

MITCHELL, C. J., and HALE, MILLER, and BLISS, JJ., concur.