LEMON *v.* MACKLEM.

BROKERS—COMMISSIONS—CONTRACTS.

    Commissions are recoverable by a broker who sold certain real estate on commission, notwithstanding efforts made by him to sell to the purchaser other property which he had in charge.

Error to Wayne; Dodds, J., presiding. Submitted June 8, 1909. (Docket No. 6.) Decided July 6, 1909.

Assumpsit by Hallett W. Lemon against William E. Macklem for commissions on the sale of real estate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ ef error. Reversed.

*Thomas Kissane* and *Lehman, Riggs & Lehman,* for appellant.

*Merriam, Yerkes & Simons,* for appellee.

OSTRANDER, J. This action is brought to recover a commission which the plaintiff claims he earned in conducting certain negotiations for a sale of real estate. His demand is stated in his bill of particulars as follows:

    "For commission for services rendered in sale of real estate known as lot 12 and easterly 20 feet in width of lot 11, subdivision of Cass Farm, being 70 feet fronting on Fort Street West, and located at the northwest corner of Third Street and Fort Street West, to one Dinan, for the sum of $21,000, by virtue of a certain verbal contract or agreement entered into on or about the 4th day of April, 1907, whereby the defendant agreed to pay to the plaintiff a commission of three (3%) per cent. on the purchase price, $630.00."

At the trial no testimony was introduced by defendant, upon whose motion the trial judge directed a verdict and judgment for the defendant. The court gave no reason

for directing a verdict. The reason, and the only reason, asserted by counsel in making the motion, was that it appeared from the testimony that plaintiff acted "without the defendant's knowledge in a capacity which is adverse and antagonistic to the defendant's interest and in bad faith."

The testimony on the part of plaintiff tended to prove that he was a real estate broker; that the defendant is also a real estate broker; that in March, 1907, plaintiff told defendant he was trying to sell some property to people who wanted downtown property—looking up downtown property for them. The defendant replied that he had several pieces of property, of which he gave the plaintiff the descriptions, who made a memorandum of them. One parcel was 250 feet on the corner of Fort and Third streets, and included the land described in the bill of particulars, the price of which defendant said was $300 a foot. Plaintiff said he would see what he could do and would let defendant know. Plaintiff gave the information he had received from defendant to a man named Van Syckle, who also did some real estate business, and later told defendant that Van Syckle thought he would be able to sell the piece of property on Fort and Third streets, saying also to defendant, " I will tell you at the start who his party is," and that it was Dinan Bros. Defendant said:

"You cannot do anything with Dinan Bros. I offered them that property some time ago, and they won't pay enough for it; but, if Mr. Van Syckle thinks he can do anything, you can go ahead * * * and I will treat you right."

Conversation then passed to the subject of commissions, and defendant said that he thought there would be 3 per cent. all right. Plaintiff reported this conversation to Van Syckle. Very soon thereafter plaintiff went to defendant, saying he wanted a more definite understanding about the commission, stating that the regular commission for selling vacant property was 5 per cent., and the talk

ended with an agreement to pay a commission of 3 per cent. Van Syckle took the matter up with Dinan Bros., who offered to buy 50 feet on the corner of the property at $300 a foot. This was reported to defendant, who said that was ridiculous; if they wanted 50 feet, they must pay $500 a foot.

Nothing came of this; but defendant agreed to see Mr. Avery, the owner of the property, and learn whether he would sell less than the whole piece, and at what figures, and he later reported that he had seen Mr. Avery, produced a memorandum, stated that he had called upon John Dinan, one of Dinan Bros., and that the best he could do was to sell 50 feet for $400 a foot, 70 feet for $350 a foot, 150 feet for $300 a foot, or the whole 250 feet at $250 a foot. He told plaintiff to take a memorandum of these prices, and asked that he and Van Syckle go ahead and get Dinan Bros. to take all they could. Van Syckle did not succeed in getting the Dinan Bros. to change their offer, and on reporting this to defendant he agreed to again see Mr. Avery. Plaintiff testified:

"After that I took Mr. Van Syckle over to meet Mr. Macklem. Mr. Macklem had never met Mr. Van Syckle, and I introduced him, and we had a nice friendly talk, but could not bind him down to anything about commission. That was before the deal was closed, as far as I know. He kept saying all the time: 'Boys, I will treat you right. I will treat you right. I won't do anything until you are satisfied.' He would not say he would pay 3 per cent., or 5 per cent., or 1 per cent. I thought it was no more than right we should know, because I know they were figuring together, of course. He said he would see Mr. Avery as soon as he came back, and he would do the best he could. That is about all there was of it."

Later on plaintiff learned that defendant had sold Dinan Bros. 70 feet of the property at $300 a foot. He called upon defendant, who said he had closed the deal, when plaintiff asked about the commission. Defendant replied that John (Dinan) did not have enough money, Jim

(Dinan) bought it, and the check came from Matt (Dinan); that there was nothing in it; that the man plaintiff and Van Syckle were talking to (John Dinan) did not buy it; that three or four other fellows wanted commissions, and he was not going to pay anybody a commission until he saw John. The commission was never paid. Upon cross-examination of the plaintiff and of Mr. Van Syckle it was made to appear that while Van Syckle was negotiating with Dinan Bros. he also offered them another piece of property owned by Richmond & Backus, about two blocks distant from the property in question on the same street. This property plaintiff authorized Van Syckle to try to sell to Dinan Bros., and he took them to see it and made some effort to sell it to them. Defendant had no connection with this other property.

A reasonable inference from all of the testimony is that defendant, if he had not abandoned the idea of selling the property to Dinan Bros., at least thought it unlikely that any such sale could be made. The reasonable conclusions to be drawn from the testimony of the plaintiff are that plaintiff was not employed as agent of the owner of the property, or as the agent of defendant, to sell the particular property for as much as he could get, but that he did undertake to negotiate a sale of it, if he could, for a fixed price. It is a common practice, and we know no legal objection to it, for real estate brokers to list for sale many different pieces of property which they are authorized to sell at prices determined by the owners of the property. It is not to be expected that, if an intending purchaser is dissatisfied with one piece of property which he has for sale, the broker will decline to show him other pieces of property. To earn his commission, a broker must, of course, make the sale or be instrumental in making it; but it would be a hard rule which would deprive a broker of commission on account of a sale made because he had exhibited to the intending purchaser several different pieces of property belonging to different clients, endeavoring to sell that particular piece which he found would suit

the buyer or that piece which the buyer was able to buy.

Assuming, as we must, that the learned trial judge proceeded upon the theory that the agency of plaintiff was of such a character that a rule of public policy forfeits his right to recover his commission, and no attempt being made in this court to sustain the judgment upon any ground other than that the plaintiff acted in bad faith, we are obliged to say that the court was in error, and to reverse the judgment and order a new trial.

GRANT, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.