*372
 
 OPINION OF THE COURT
 

 Graffeo, J.
 

 Once oral negotiations have commenced between a seller and a potential purchaser concerning a real estate transaction, does the brokerage firm that produced the potential purchaser owe the seller a duty to refrain from showing the potential purchaser additional properties? We hold that it does not.
 

 Plaintiffs Irving and Martha Sonnenschein purchased a condominium apartment in a building in Manhattan in 1989 but never resided there. Instead, they immediately listed the apartment for resale on an exclusive basis with Phyllis Koch Real Estate, agreeing to pay Koch a commission of 5% of the sale price. With plaintiffs’ consent, Koch contacted other brokerage firms seeking potential buyers, offering to sell the property under a co-brokerage arrangement. Under the practice in effect in the New York City real estate market at the time, a co-broker who facilitated a transaction would receive half of the commission due the listing broker.
 

 In December 1990, Susan Turkewitz, a salesperson employed by defendant Douglas Elliman-Gibbons & Ives (DEGI), a real estate brokerage firm, contacted the Koch salesperson handling plaintiffs’ listing and indicated she had interested buyers— Steve and Jenny Tam — willing to pay $820,000 for the apartment. Rather than a 2.5% commission, DEGI requested 4% of the purchase price.
 

 The Koch salesperson relayed this proposal to plaintiff Irving Sonnenschein, an experienced real estate lawyer who was representing himself and his wife in connection with sale of the apartment. Apparently willing to pay the requested commission if the deal closed, Sonnenschein drafted a proposed agreement in the form of a letter from DEGI to plaintiffs, which stated:
 

 “In the event that a contract is signed and exchanged between you and our prospective buyer, and closing takes place pursuant to such contract, we are to receive at closing 4% of the sale price. If the contract is not signed for any reason whatever, or if the contract is signed but the transaction does not close for any reason whatever (except the Seller’s refusal to close notwithstanding that closing should take place pursuant to the contract and that the buyer is ready and able to do so) we are
 
 *373
 
 not to be entitled to any payment or any compensation.”
 

 A vice-president of DEGI signed the letter agreement, as did both plaintiffs.
 

 Sonnenschein then forwarded an unsigned contract of sale to the Tams’ attorney with a cover letter indicating that he was receptive to any comments concerning the proposed contract. If the contract was acceptable as written, the Tams were to sign and return it with a check in the amount of $82,000 as a down payment. The cover letter concluded with the statement: “The enclosed is sent with the understanding that there is no obligation under the Contract on the part of either party unless and until the Contract is signed by Seller and Purchaser and the signed Contracts exchanged between them.”
 

 The Tams never signed the contract or forwarded a down payment. Earlier that month, defendant Patricia Cliff, another DEGI salesperson, had showed the Tams a different apartment in plaintiffs’ building. It is undisputed that this apartment, owned by Elizabeth and David Roderick and listed exclusively for sale with DEGI, was superior to plaintiffs’ because it was larger and had a better view. At some point in late December, the Tams decided to purchase the Roderick apartment rather than pursuing the transaction with plaintiffs. A written contract of sale for the Roderick apartment was executed on January 4, 1991 for a purchase price of $838,300 and the closing occurred later that spring.
 

 Plaintiffs ultimately sold their apartment to another buyer for $790,000. When they learned that the Tams had purchased the Roderick apartment through the efforts of DEGI, they commenced this breach of fiduciary duty action against DEGI and Cliff. In the complaint, plaintiffs asserted that DEGI had assumed the role of plaintiffs’ broker with respect to the prospective sale to the Tams and, through Cliff’s conduct, defendants had breached their fiduciary duty by inducing the Tams to buy the Roderick apartment instead, a transaction that allegedly yielded DEGI a higher commission.
 

 After discovery, defendants moved for summary judgment contending they owed no duty to plaintiffs because they represented the Tams and not the plaintiffs in connection with the proposed transaction and, in any event, had not engaged in any improper conduct. In opposition to the motion, plaintiffs claimed that DEGI had become their broker and had breached a fiduciary duty by “arranging” the sale of the Roderick apart
 
 *374
 
 ment to the Tams who had earlier agreed to purchase plaintiffs’ apartment. Supreme Court denied the application, concluding defendants had assumed the role of plaintiffs’ broker when the DEGI vice-president executed the commission agreement and there was an issue of fact as to whether defendants breached a fiduciary duty by thwarting the transaction between plaintiffs and the Tams. When the matter proceeded to trial, the sole issue presented to the jury was whether defendants “knowingly and intentionally acted to sabotage the proposed sale of the Sonnenschein apartment to the Tams.” The jury found in favor of plaintiffs and judgment was entered in the amount of $52,000 as stipulated damages. Although plaintiffs were initially granted pre-verdict interest, that aspect of the award was vacated on motion of defendants.
 

 The parties cross-appealed, defendants challenging the determination of liability and plaintiffs contesting the denial of pre-verdict interest. The Appellate Division reversed and directed judgment in favor of defendants, with one Justice dissenting (274 AD2d 244). The court unanimously concluded that Supreme Court erred in determining, as a matter of law, that defendants assumed the role of plaintiffs’ broker and owed a fiduciary duty to plaintiffs, finding that the nature of the relationship between plaintiffs and defendants was a question of fact which should have been submitted for jury determination. Nonetheless, the majority held that, even assuming defendants owed plaintiffs a fiduciary duty, defendants did not breach that duty when they facilitated a deal between the Tams and the Rodericks because there was never a binding contract between plaintiffs and the Tams. The dissent disagreed and would have remitted for a retrial. The Appellate Division granted plaintiffs’ application for leave to appeal to this Court and we now hold that defendants were entitled to summary judgment dismissing the complaint.
 

 “[A] real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal”
 
 (Dubbs v Stribling & Assocs.,
 
 96 NY2d 337, 340; see,
 
 Northeast Gen. Corp. v Wellington Adv.,
 
 82 NY2d 158, 163;
 
 Wendt v Fischer,
 
 243 NY 439). The preliminary question in this case is whether defendants had a broker/principal relationship with plaintiffs giving rise to an obligation to act as their fiduciaries. In determining the existence of a broker/principal relationship — with its concomitant fiduciary obligations — courts must review the particular communications and agreements between the parties under the circumstances presented
 
 (see, Dubbs v
 
 
 *375
 

 Stribling & Assocs.,
 
 supra;
 
 see generally, Northeast Gen. Corp. v Wellington Adv.,
 
 82 NY2d at 162).
 

 Although plaintiffs allege that defendants assumed the role of their broker, there was evidence to the contrary. Plaintiffs neither listed their property with DEGI, nor approached DEGI or any of its associates for assistance with the sale of their apartment. Rather, DEGI contacted Koch, plaintiffs’ listing broker, and advised them of potential purchasers, the Tams. Plaintiffs’ reference to the commission agreement was insufficient to demonstrate the existence of a broker/ principal relationship for no clear intent to create such a fiduciary relationship can be discerned from the language Sonnenschein used to characterize the arrangement between plaintiffs and DEGI. The letter agreement indicated that plaintiffs were represented by Koch and that DEGI was bringing the Tams to plaintiffs as prospective purchasers. DEGI did not agree to act on plaintiffs’ behalf, nor is there any statement in the agreement that DEGI was expected to perform any services for them. Thus, plaintiffs did not establish at the summary judgment stage that defendants agreed to become plaintiffs’ broker and act as plaintiffs’ fiduciaries.
 

 Notwithstanding this conclusion, we need not remit this issue for further fact-finding. Even assuming a broker/principal relationship developed over the course of dealings between plaintiffs and defendants, plaintiffs failed to come forward with proof that defendants engaged in conduct which would have amounted to a breach of fiduciary duty. Giving plaintiffs the benefit of every reasonable inference flowing from the admissible evidence, the proof they submitted established only that defendants showed the Tams another apartment while serious negotiations relating to the purchase of plaintiffs’ unit were underway and, thereafter, assisted the Tams in contracting to purchase the Roderick apartment. Such behavior would not constitute a breach of duty unless defendants had an obligation either to refuse the Tams’ requests to see other properties or to decline to assist them in making an offer to the Rodericks.
 

 This Court has not addressed the parameters of a real estate broker’s duty under these circumstances. Other jurisdictions have held that, in the absence of an agreement with a principal to the contrary, a broker owes no duty to refrain from “offering the properties of all [its] principals to a prospective customer”
 
 (Coldwell Banker Commercial Group v Camelback Off. Park,
 
 156 Ariz 226, 230, 751 P2d 542, 546;
 
 McEvoy v Gins
 
 
 *376
 

 berg,
 
 345 Mass 733, 737, 189 NE2d 546, 547;
 
 see generally, Foley v Mathias,
 
 211 Iowa 160, 233 NW 106;
 
 Lemon v Macklem,
 
 157 Mich 475, 122 NW 77). We find this approach to be consistent with the nature and fundamental requirements of the real estate marketplace in New York. Unless a broker and principal specifically agree otherwise, a broker cannot be expected to decline a prospective purchaser’s request to see another property listed for sale with that broker. Any other rule would unreasonably restrain a broker from simultaneously representing two or more principals with similar properties for fear of violating a fiduciary obligation in the event a buyer chose the property of one principal over that of another. Similarly, such a limitation would frustrate the interests of sellers, who benefit from the opportunity to market their properties to as many potential purchasers as possible, as well as the interests of potential buyers, who often request exposure to a number of properties in order to select the one most suitable to their needs and budget. For these reasons, we decline to impose upon all broker/principal relationships the restrictive view of broker duty that plaintiffs espouse. Of course, a principal remains free to enter into an explicit agreement with a broker to achieve such an exclusive arrangement.
 

 Plaintiffs contend that even if defendants were not generally prohibited from showing multiple properties to the Tams, a duty to refrain from doing so arose in this case when plaintiffs and the Tams entered into an oral understanding regarding the purchase of plaintiffs’ apartment. Plaintiffs are not entitled to relief on this ground, however, for their assertion that they reached a meeting of the minds with the Tams is not supported by record evidence. The commission agreement and cover letter accompanying the proposed contract of sale, documents which were drafted by Sonnenschein, demonstrate that plaintiffs did not consider themselves to be bound by the oral negotiations. Both documents clearly contemplated that the parties were free to decline to enter into a contract — a prerogative the Tams exercised. As plaintiffs failed to come forward with evidence that a complete and enforceable purchase agreement existed, the proof was insufficient to support their claim that defendants wrongfully interfered with any such agreement when they facilitated the transaction between the Rodericks and the Tams. Accordingly, defendants were entitled to summary judgment dismissing the complaint.
 

 To the extent plaintiffs argue on appeal that defendants breached a fiduciary duty by disclosing confidential price infer
 
 *377
 
 mation, our review of the record reveals that this theory of recovery was not articulated in the complaint or in plaintiffs’ papers opposing summary judgment. Accordingly, we have no occasion to address this claim.
 

 The order of the Appellate Division should be affirmed, with costs. The certified question should not be answered upon the ground that it is unnecessary.
 

 Judges Smith, Levine, Ciparick, Wesley and Rosenblatt concur; Chief Judge Kaye taking no part.
 

 Order affirmed, etc.