05-6566-cv
Rivkin v. Century 21 Teran Realty, LLC, et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------------------

August Term 2006

Argued: March 27, 2007              Decided: July 12, 2007

Docket No. 05-6566-cv

-------------------------------------------------X

OLEG RIVKIN,

              Plaintiff-Appellant,

      - against -

CENTURY 21 TERAN REALTY LLC, ANDREW PECK, CHLOE DRESSER and JOSHUA LUBORSKY,

              Defendants-Appellees,

SUSAN MARTIN and ROBERT MARTIN,

              Defendants.

-------------------------------------------------X

     Before:   FEINBERG, SOTOMAYOR, and KATZMANN,
               Circuit Judges.

     Plaintiff-Appellant Oleg Rivkin appeals from an oral decision and order of the United States District Court for the Northern District of New York (Sharpe, J.) granting Defendants-Appellees' motion for summary judgment and dismissing all claims. Rivkin's claims implicate a question regarding the nature of the fiduciary duty owed by a buyer's real estate agent to a principal, which is a significant issue of New York law for which there is no direct precedent.

Question certified to the New York Court of Appeals.

ROBERT J. TOLCHIN, New York, NY, for Plaintiff-Appellant.

STEPHEN H. VOLKHEIMER, Hiscock & Barclay, LLP, Albany, NY, for Defendants-Appellees.

FEINBERG, Circuit Judge:

Plaintiff-Appellant Oleg Rivkin appeals from an oral decision and order of the United States District Court for the Northern District of New York (Sharpe, J.) granting Defendants-Appellees' motion for summary judgment and dismissing Rivkin's complaint. This case raises a significant issue of New York law regarding the nature of the fiduciary duty a real estate buyer's agent owes to the buyer (sometimes referred to hereafter as the "principal"). For the reasons stated below, we certify to the New York Court of Appeals the following question: Did any or all of Defendants-Appellees breach a fiduciary duty to Plaintiff-Appellant Rivkin by failing to disclose, in any form, Defendants-Appellees' representation of a competing buyer for the property Rivkin sought to buy?

I. BACKGROUND

A. Factual and Procedural History

The facts, recited below, are mostly undisputed. Plaintiff Rivkin, who is a resident and citizen of New Jersey, contacted Defendant Century 21 Teran Realty LLC ("Teran") on

-2-

May 25, 2004, regarding his interest in purchasing a particular lake-front property in Ulster County, New York.[1] Teran is a real estate brokerage firm in Woodstock, New York that is co-owned by Defendants Andrew Peck and Chloe Dresser, who are both real estate brokers licensed by the State of New York. Rivkin was referred to Defendant Luborsky, a real estate associate broker at Teran licensed by the State of New York. Luborksy suggested to Rivkin a different property (hereafter "the Property"), which was listed at $100,000 and seemed to satisfy all of Rivkin's requirements.[2] At that time, Luborsky told Rivkin that he and Teran would like to act as Rivkin's "buyer's agent."

The same day, and before Rivkin had seen the Property, Rivkin told Luborsky to offer $75,000 for the Property, sight unseen. Luborsky said he thought this was a fair opening offer and that he understood that lower offers had been made on the Property and rejected. Luborsky communicated the offer to the

---

[1] There is some dispute, which we need not resolve, regarding whether Rivkin contacted Teran on May 24 or 25.

[2] Susanne Martin and Robert Martin eventually purchased the Property. They were dismissed as defendants from the case by stipulation of all parties, and are not parties to the appeal. They had contacted Dresser, another associate broker at Teran, and had expressed an interest in the Property five days earlier, on May 20, 2004.

sellers' agent, Deborah Mills.[3]  Several days later, on May 28, Rivkin visited the Property in person for the first time, and at that point signed a written "binder," or offer to purchase the Property, for $75,000.[4]

During the visit to the Property on May 28, Luborsky presented to Rivkin a "Disclosure Regarding Real Estate Agency Relationship," which stated, among other things, that a buyer's agent "acts solely on behalf of the buyer" and has a fiduciary duty of "undivided loyalty ... [and] full disclosure" to the buyer.  At Luborsky's request, Rivkin signed an acknowledgment that he had received the disclosure form; Luborsky[5] also signed the acknowledgment.[6]

During the same conversation on May 28, Rivkin told Luborsky that he was willing to raise his offer to the asking

---

[3]  The sellers' agent was associated with Century 21 Cherrytown Associates, presumably a franchise of Century 21. Teran is also a franchise of Century 21.  However, neither party has made any allegation on the basis of this commonality.

[4]  Memorial Day that year fell on Monday, May 31.

[5]  On this form Luborksy was listed as the real estate licensee "of" the firm Teran.

[6]  The parties agree that Luborsky did not give Rivkin a "Buyer Agency Agreement," which is referred to on Teran's website.  However, neither party appears to ascribe any importance to Teran's failure to give Rivkin this form.  Rivkin does, however, rely upon the form to bolster his argument regarding the fiduciary duty a buyer's agent owes.

price of $100,000. Luborsky advised Rivkin to wait for a counter-offer from the sellers.[7]

The Martins bid $100,000 for the Property on May 30, two days after Rivkin made his $75,000 bid. Unbeknownst at that time to Rivkin and Luborksy, the Martins' bid, which was ultimately successful, was submitted on their behalf by Dresser, another Teran agent.

Rivkin contacted Luborsky on May 30 and May 31 to inquire about the status of his offer. Both times, Luborksy responded that he had not heard anything from the sellers' agent and urged Rivkin to wait until after the Memorial Day weekend. When Rivkin contacted Luborsky again on June 1, Luborksy told him he had learned from the sellers' agent that there had been other offers on the Property over the weekend. Rivkin reiterated that he wanted the opportunity to raise his offer and that he was prepared to do so. Luborsky said he would try to find out from the sellers' agent whether the sellers were going to make a counter-offer or whether they wanted to receive "best and final" offers from all bidders.

Later that day (June 1), Luborsky called Rivkin and said that the sellers had accepted another offer and Rivkin was out

---

[7] According to Luborksy, he contacted the sellers' broker on May 29 to confirm that the offer had been received. The broker stated that the sellers were traveling over the weekend so it would be difficult to reach them that weekend. The broker also said that the property might be shown over the weekend.

of the running for the Property.  Rivkin asked Luborsky to contact the sellers, presumably in hopes of convincing them to at least hear what Rivkin's best offer was.  On June 2, Rivkin called Luborsky, who said that he was unable to get any information from sellers' agent and that the sellers were apparently not entertaining any more offers.

The same day (June 2), Rivkin himself contacted the sellers' agent, who said the sellers had orally accepted a full price offer on the Property.  According to the amended complaint, she further stated: "I don't know if I should be telling you this, but I think you should know that the full-price offer came from your own broker's office."  When Rivkin asked Luborksy about this, Luborsky confirmed that the full price offer came from Teran.  Rivkin then called one of the sellers directly and asked her if she was aware of Rivkin's offer.  The seller responded that she was aware of the offer, that it was too low, and that Rivkin should deal with her broker and should not call her again.  Rivkin then also called the other seller.

Shortly thereafter, Rivkin told Luborsky to offer $101,000, contingent only on a water well inspection.  According to Luborksy, he advised Rivkin that under the circumstances he should consider raising his offer to $105,000 or $110,000.  After contacting the seller with Rivkin's offer

of $101,000 on June 2, Luborsky told Rivkin that the sellers were not entertaining his offer and that the full price offer had no conditions attached. On the same day, Rivkin instructed Luborsky to offer $105,000 with no contingencies. Still on June 2, Rivkin again called one of the sellers to personally relay his $105,000 offer. The seller indicated to Rivkin that he would consider his offer.

At this stage, according to their respective testimony, Dresser did not know Luborsky's client was bidding on the Property,[8] and Peck did not know that two agents associated with Teran were bidding on the same property.

On June 3, Rivkin contacted the sellers' broker regarding his offer; he also sent a follow-up letter confirming the substance of the conversation. That day, Rivkin terminated his relationship with Luborsky and Teran.

Between June 6 and June 11 there was some suggestion that the Martins' offer might not go through. However, on June 11 the Martins signed a written contract for the purchase of the Property and they closed on the Property on August 18.

Luborsky never spoke with Dresser regarding the Property before it was sold. However, Teran had no system to check if

_____

[8] According to the testimony of Dresser (the competing buyer's agent), she learned for the first time on June 4 that Luborsky's client was one of the other parties interested in the Property.

its agents were representing multiple buyers bidding on the same property.

Following the Martins' purchase of the property, Rivkin filed this suit, in which he bases subject matter jurisdiction on diversity of citizenship, 28 U.S.C. § 1332(a)(1), and advances 10 claims. For our purposes, the most pertinent is the first, against all Defendants-Appellants, for breach of fiduciary duty.[9] After the completion of discovery, the parties filed summary judgment motions. Rivkin moved for partial summary judgment on the issue of liability, seeking a holding that Teran had breached its duties to him. The Defendants sought to dismiss Rivkin's entire case.

The district court granted Defendants' motion, entered judgment in Defendants' favor and dismissed the case. The judge framed the issue as "whether or not ... [there should be] a per se rule that under circumstances like this, two employees of the same agency cannot, absent full disclosure, represent competing buyers for a piece of property." The judge noted

---

[9] The 10 claims are: (1) breach of fiduciary duty; (2) fraud and fraudulent concealment; (3) fraud under § 349 of New York General Business Law; (4) aiding and abetting fraud; (5) unjust enrichment; (6) under the faithless agent doctrine; (7) tortious interference with prospective economic advantage and pre-contractual relations; (8) breach of contract; (9) injunction; and (10) constructive trust. The first seven claims are against all Defendants-Appellees; the eighth is against Teran only. All damages alleged stem from Rivkin's loss of the Property.

-8-

there was no New York case holding that facts similar to those here amounted to a violation of law. The court "decline[d] to hold that on these facts ... there is any per se rule that would preclude representation by two employees of the same agency." He further stated that "[i]t is also true ... that it [was] probably unnecessary for [the court] to even reach that issue, because on the facts, as everybody concedes them, there simply is no basis whatsoever to associate the harm in the representation from Luborsky to the harm to the plaintiff from losing the [P]roperty."

Rivkin then filed this timely appeal.

B. Buyer's Agents

The use of a real estate agent exclusively by a potential buyer of property -- rather than by (1) a seller or (2) a seller and buyer together -- is apparently a somewhat new phenomenon in the real estate industry in New York. For example, Defendant Peck advertised in an article posted on Teran's website that Teran was "the first firm in Ulster County to begin, in 2001, to work with buyers only as their agents, never as subagents for sellers." See "Why Consider a Buyer's Agent Agreement?", http://www.teranrealty.com/advice.htm (last visited on July 5, 2007). Nationwide, the trend towards the use of buyer's agents in residential real estate apparently began in the mid-1980's. See Ronald Benton Brown, Joseph M.

Grohman, Manuel R. Valcarcel, "Real Estate Brokerage: Recent Changes in Relationships and a Proposed Cure," 29 Creighton L. Rev. 25, 42 & 67 (1995). New York's agency disclosure law, which includes provisions for buyer's agents, was passed in 1991 and took effect in 1992. See id. at 67; see also Roy T. Black, "Proposed Alternatives to Traditional Real Property Agency: Restructuring the Brokerage Relationship," 22 Real Est. L.J. 201, 209 (1994); N.Y. Real Prop. Law § 443 (McKinney's 2004).

In contrast to the more commonly-used "seller's agent," a buyer's agent represents individuals who are interested in purchasing property. Among other services, a buyer's agent finds property that a purchaser may be interested in, advises the purchaser regarding price, and negotiates on behalf of the purchaser. New York's Real Property Law dictates various requirements for buyer's agents. In particular, a buyer's agent is required to give the buyer a disclosure form, which states in part that a buyer's agent "has, without limitation, the following fiduciary duties to the buyer: reasonable care, undivided loyalty, confidentiality, full disclosure, obedience and duty to account."[10] N.Y. Real Prop. Law § 443 (McKinney's 2004).

---

[10] As noted above, Luborsky gave Rivkin this form on May 25.

-10-

## II.  DISCUSSION

### A.  Standard of Review

We review the determination of a district court on a motion for summary judgment de novo.  See Cellular Tel. Co. v. Town of Oyster Bay, 166 F.3d 490, 492 (2d Cir. 1999).  Summary judgment will be granted if the moving party shows that there is no genuine issue of material fact and that the moving party is entitled to that judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Fed. R. Civ. P. 56(c).  This Court must view the evidence in the light most favorable to Rivkin, and draw all reasonable inferences in his favor, because he is the party opposing the summary judgment motion granted below.  See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also Hemphill v. Schott, 141 F.3d 412, 415 (2d Cir. 1998).

However, "it is well-established that the controlling interpretation of state laws should normally be given by state rather than federal courts."  Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 203 (2d Cir. 2001).

### B.   The Parties' Central Arguments

On appeal, Rivkin argues that a real estate broker is a fiduciary with a duty of loyalty and full disclosure to the principal.  Quoting New York law, Rivkin contends that if "a broker's interests or loyalties are divided due to ...

representation of multiple parties, the broker must disclose to the principal ... the material facts illuminating the broker's divided loyalties." Dubbs v. Stribling, 96 N.Y.2d 337, 340 (2001).

Rivkin further argues that Defendants-Appellees breached this duty by representing both Rivkin and the Martins on the same property without disclosing, in some form, this dual representation. Rivkin notes that even Teran co-owner Peck testified in his deposition that if Teran represented competing buyers who were given confidential information regarding the other's past and future bids, Teran would be "unable to fulfill that portion of [its] function as a buyer's agent which involves discussion of what a fair price for the property would be." As summarized at oral argument, Rivkin contends that "the very people you hired to work for you" should not be "the ones who are working against you."

Although Rivkin does not discuss the exact contours of the fiduciary duty owed, nor the scope and timing of any requisite disclosure, he argues that like a law firm, a real estate firm should at least be required to have a "conflict checking system," and if the brokerage firm represents more than one principal bidding on a single property, the firm must disclose this "completely" to the principals. Rivkin acknowledges that there is no New York case law regarding buyer's agents, but he

thinks the case can be decided under the well-established real estate agency rule that a "broker must not represent any interests adverse to those of his or her principal in transactions [that] involve the subject matter of the agency relationship, without the principal's full knowledge and consent, nor may the broker act as agent for both parties in a transaction without the full and free consent of both parties," 12 C.J.S. Brokers § 124 (2007).

Rivkin insists, moreover, that his agency relationship was with Luborsky and Teran. He points out, for example, that Teran repeatedly referred to Rivkin as a "client of the firm," that Defendants-Appellees admitted in their Answer that "Luborsky is employed by" Teran, and that Luborsky admitted that he told Rivkin that he "and his company, Teran" would like to act as Rivkin's buyer's agent. Teran, Rivkin argues, had a duty to know of and disclose any conflicts of interest between its brokers.

Furthermore, Rivkin argues, the breach caused him harm because had he been told the full story he would have been able to protect his own position.[11] He would have known that he

---

[11] Defendants-Appellees argue that Rivkin has not preserved the issue of causation for appeal because he did not address this aspect of the district court's holding in his opening brief. We note that Rivkin did address causation, if not explicitly by name, by advancing the argument noted above about how he would have acted if given what he terms full disclosure. In addition, to the extent his opening brief can be construed to have omitted

-13-

should immediately increase his bid rather than wait for a counter-offer as Luborsky recommended. He would have known not to rely on anybody at Teran for advice. And he would not have found himself in the position of hassling the sellers after they had orally agreed to accept another offer, which understandably made him an unattractive purchaser in the sellers' eyes. Finally, Rivkin argues, in the alternative, that whether his damage was caused by Defendants-Appellees is an issue of fact that is unsuitable for summary adjudication.

Defendants-Appellees respond, in part, that Rivkin's claim fails because even assuming a breach of fiduciary duty occurred, any breach could not have caused him harm. Luborsky did not discuss the sale with Dresser before it was final; he also followed all of Rivkin's directions with respect to the Property. Rivkin has not established any active collusion by Defendants-Appellees to steer the Property to the Martins. Nor has Rivkin shown, Defendants-Appellees say, that Rivkin would have acted differently (thus affecting whether the sellers of the Property would have accepted his bid) had he known that

---

the issue, and in light of the ample argument devoted to the question of causation in the opposition and reply briefs, we exercise our discretion and decline to deem the issue waived for purposes of appeal. See Fed. R. App. P. 2 (giving a Court of Appeals the discretion to overlook a failure to raise an issue on appeal if manifest unjustice otherwise would result); see also United States v. Allen, 127 F.3d 260, 264 (2d Cir. 1997).

Teran was simultaneously representing another principal bidding on the Property. Thus, Defendants-Appellees argue, even if they breached a fiduciary duty in this case by representing competing buyers on the Property without full disclosure, the breach was not a "substantial factor" see Milbank, Tweed, Hadley & McCloy v. Chan Cher Boon, 13 F.3d 537, 543 (2d Cir. 1994), in causing an identifiable loss to Rivkin.

In addition, Defendants-Appellees counter that an associate broker is an independent contractor, not an employee, of the brokerage firm. The clients of one associate broker are, they argue, unrelated to the clients of another broker in the same firm. Peck testified to this relationship, noting also that associate brokers do not receive a wage from Teran but are paid a commission related to specific transactions.[12] In other words, real estate brokers are not comparable to lawyers in a firm: they are more like a franchiser and franchisee, and the only fiduciary duty that is owed is between the associate broker and the principal. Luborsky, they say, did not breach this duty because he did not disclose confidential information that Rivkin provided to him, he worked

---

[12] Peck also testified that he supervises the associate brokers, and that the associate brokers cannot work unless they work under a licensed broker and that for Teran he is the licensed broker.

-15-

in Rivkin's best interests (given the information he had), and he gave Rivkin undivided loyalty.

Finally, Defendants-Appellees argue that it would damage the real estate industry in New York to hold that a broker breaches his fiduciary duty if two brokers in that brokerage firm represent clients bidding on the same property without full disclosure.

C. Certification

*General Certification Law*

Certification is appropriate "[w]henever it appears . . . that determinative questions of New York law are involved in a [pending case] for which no controlling precedent of the [New York] Court of Appeals exists."  N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (2006)[13]; see also Local Rules of the United States Court of Appeals for the Second Circuit § 0.27[14].

---

[13]  This statute reads, in relevant part:
Section 500.27 Discretionary proceedings to review certified questions from Federal courts and other courts of last resort.
(a) Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.

[14] The Rule reads, in full:
Certification of Questions of State Law

-16-

In other words, certification may be proper if existing state law is "so uncertain that we can make no reasonable prediction" as to how the New York Court of Appeals would resolve the question. DiBella v. Hopkins, 403 F.3d 102, 111 (2d Cir. 2005).

However, questions are not to be routinely certified "simply because a certification procedure is available," Kidney by Kidney v. Kolmar Labs., Inc., 808 F.2d 955, 957 (2d Cir. 1987). Factors justifying certification include "the absence of authoritative state court interpretations of the state statute, the importance of the issue to the state and the likelihood that the question will recur, and the capacity of certification to resolve the litigation." Green v. Montgomery, 219 F.3d 52, 60 (2d Cir. 2000). This Court may also consider whether the question implicates issues of state public policy.

---

Where authorized by state law, this Court may certify to the highest court of a state an unsettled and significant question of state law that will control the outcome of a case pending before this Court. Such certification may be made by this Court <u>sua sponte</u> or on motion of a party filed with the clerk of this Court. Certification will be in accordance with the procedures provided by the state's legislature or highest state court rules, e.g., Conn. Public Act No. 85-111; New York Court of Appeals Rule 500.7. Certification may stay the proceedings in this Court pending the state court's decision whether to accept the certification and its decision of the certified question.

-17-

See Krohn v. New York City Police Dep't, 341 F.3d 177, 180 (2d Cir. 2003).

### The Appropriateness of Certification Here

This case turns on an "unsettled" question of state law for which there is "no direct precedent."  See Alexander & Alexander Servs., Inc. v. Lloyd's Syndicate 317, 902 F.2d 165, 169 (2d Cir. 1990) (certifying to the New York Court of Appeals a question with "no direct precedent ... rather than having the only precedent on point be that of a federal court, which may be mistaken"); Israel v. State Farm Mut. Auto. Ins. Co., 239 F.3d 127, 136 (2d Cir. 2000) (certifying a case in which the Court found "no Connecticut precedent directly addressing the questions presented").[15]

The issues here concern the nature and extent of a buyer's agent's obligation to avoid or mitigate conflicts of interest among its principals.  It is clear that buyer's agents owe various fiduciary duties to their clients under New York's

---

[15]  At oral argument before us, Rivkin argued that certification would be appropriate in this case.  The district court, without addressing certification, noted in its oral decision that there is no New York case "on these facts that has held that that kind of conduct in the real estate industry violates the law."  Defendants, for their part, acknowledged at oral argument the there is no New York Court of Appeals case describing the nature of a buyer's agent's fiduciary duty, but argued that Sonnenschein v. Douglas Elliman-Gibbons & Ives, 96 N.Y.2d 369 (2001), should apply by analogy.  They argued, further, that certification was inappropriate because any lack of disclosure did not cause any harm to Rivkin.

-18-

property law.   N.Y. Real Prop. Law § 443 (McKinney's 2004); see also Dubbs, 96 N.Y.2d at 340; see also section I.B., above.

As noted above, Rivkin points to Dubbs, 96 N.Y.2d 337, for support.  Although in that case the New York Court of Appeals made the general statement that "it is well settled that a real estate broker is a fiduciary with a duty of loyalty and an obligation to act in the best interests of the principal," id. at 340, Dubbs addressed the duties of seller's agents rather than buyer's agents.

Indeed, it appears that no New York case deals with a buyer's -- rather than a seller's -- agent's duties.  The real estate marketplace may, for various reasons, dictate different duties for these two kinds of agents.  In addition, even if we were to presume that sellers' and buyers' agents owe identical fiduciary duties, the facts of the New York cases that deal with sellers' agents' duties are materially different from those here: Dubbs, for example, involved allegations of an improper "personal stake" in the transaction, and Sonnenschein addressed whether a seller's broker may offer the properties of all of its principals to a potential customer.  Thus, these cases neither answer the questions in this case nor can be used with confidence to reasonably predict the answer.

The question certified in this case is also "determinative," N.Y. Comp. Codes R. & Regs. tit. 22, §

-19-

500.27(a) (2006). This Court will ultimately need to decide whether Rivkin has raised a triable issue of fact regarding whether Teran's alleged breach of fiduciary duties caused his injury. However, the causation analysis will turn on the type of disclosure that New York law requires a buyer's agent to make.

First, assume Teran's duty was to wall off the two agents to ensure that they did not communicate confidential information to one another. Because Rivkin does not contend that Luborsky actually divulged confidential information about his representation to Dresser, or vice versa, Teran's failure to screen off the two agents or otherwise prevent them from exchanging confidential information, even if a breach of its duties, could not have resulted in any injury to Rivkin.

If Teran's duty of disclosure required it to disclose only the fact of a conflict (and not any particular information about the competing client's bids), then there may or may not be a triable question on causation. On the one hand, it is undisputed that Rivkin knew that the property was being shown to other prospective buyers. Rivkin knew he had a competitor for the property and decided to stay with his opening bid. It is not clear how the knowledge that one of those buyers was also represented by Teran would have affected Rivkin's choices. The proximate cause of his failure to prevail in the bidding,

-20-

then, could be seen as the sellers' apparent decision to accept the first reasonable offer. On the other hand, if Rivkin had been told at the outset that Teran was representing another buyer interested in the Property, perhaps (as Rivkin argues), Rivkin would have chosen not to rely on Teran for advice regarding how much to bid (or he might have ended his relationship with the firm altogether, as he did on June 3). Luborsky indisputably agreed with Rivkin that $75,000 was a reasonable opening bid. Perhaps, then, there would be a triable issue regarding whether, absent a breach of duty so-defined, Rivkin would have submitted a higher, successful, initial bid on May 25, which would have been two days before the Martins' first (and successful) bid.

Meanwhile, if Teran's duty of disclosure required Luborsky to disclose to Rivkin the amount and terms of a competing client's bid, and to do so <u>before</u> placing Rivkin's bid, Rivkin could have a triable issue of fact on causation given his testimony that he was prepared to make an initial bid at the asking price and told this to Luborsky. In other words, this information might have led him to raise his bid rather than wait for a counteroffer; and the sellers might have accepted the higher offer or begun a bidding war. Similarly, even if this disclosure would have been required only <u>after</u> placing Rivkin's bid, there might be a triable question whether Rivkin

-21-

would have been able to make a counterbid quickly enough to dissuade the sellers from accepting the Martins' bid.

In sum, we can only speculate regarding whether there is a triable issue regarding causation because resolution of the issue is directly tied to the nature of Teran's fiduciary duty to Rivkin. The substance of the fiduciary duty owed in this case is thus determinative.

Because this issue relates to the relationship between real estate agents and their clients and affects the real estate market in New York, the question is significant, implicates important public policy for the State of New York and is likely to be repeated. See Local Rules of the United States Court of Appeals for the Second Circuit § 0.27. For the reasons detailed above, we believe that the New York Court of Appeals can best resolve the issue of real estate law that we are certifying and we solicit its views "rather than having the only precedent on point be that of a federal court, which may be mistaken." Alexander & Alexander, 902 F.2d at 169.

## III. Conclusion

Because of the absence of authoritative state court precedent, the fact that the question is important, likely to recur and determinative, and because of the policy implications for the State, we hereby respectfully certify the following question to the New York Court of Appeals: Did any or all of

-22-

Defendants-Appellees breach a fiduciary duty to Rivkin by failing to disclose, in any form, Defendants-Appellees' representation of a competing buyer for the property Rivkin sought to buy?

The certified question may be deemed expanded to cover any further pertinent question of New York law involved in this appeal that the Court of Appeals chooses to answer. This panel retains jurisdiction and will consider any issues that may remain on appeal once the New York Court of Appeals has either provided us with its guidance, or declined certification.

It is therefore ordered that the Clerk of this Court transmit to the Clerk of the Court of Appeals of the State of New York a Certificate, as set forth below, together with a complete set of briefs, appendices, and record filed by the parties with this Court. The parties are further ordered to bear equally such fees and costs, if any, as may be required by the New York Court of Appeals.

## Certificate

The foregoing is hereby certified to the Court of Appeals of the State of New York, pursuant to 2d Cir. R. § 0.27 and N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27, as ordered by the United States Court of Appeals for the Second Circuit.