**LING NAN ZHENG, et al., Plaintiffs,**

v.

**LIBERTY APPAREL COMPANY, INC., Albert Nigri, Hagai Laniado, Defendants.**

No. 99 Civ. 9033(RJS).

United States District Court, S.D. New York.

May 30, 2008.

James Reif Gladstein, Esq., Reif & Meginniss, L.L.P., New York, NY, for Plaintiffs.

Vano I. Haroutunian, Esq., Ballon, Stoll, Bader and Nadler, New York, NY, for Defendants.

## MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiffs bring this action against Liberty Apparel Company, Inc. ("Liberty Apparel"), and its principals, Albert Nigri and Hagai Laniado, alleging that defendants failed to pay plaintiffs wages allegedly owed to them under federal and New York State wage and overtime compensation

provisions. On March 13, 2002, the Honorable Richard C. Casey, District Judge, granted defendants' motion for summary judgment against plaintiffs' federal claims, and declined to exercise supplemental jurisdiction over plaintiffs' state law claims. On February 13, 2004, the Second Circuit vacated Judge Casey's decision and remanded the action to this Court for further proceedings. On October 6, 2004, defendants renewed their motion for summary judgment on plaintiffs' remaining claims.[1]

At a conference on May 23, 2008, the Court issued an oral order denying defendants' renewed motion for summary judgment in its entirety. The Court now sets forth its reasons for that decision.

## I. BACKGROUND

The Court presumes the parties' familiarity with the facts and procedural history of this action as set forth, at length, in Judge Casey's summary judgment decision, *Zheng v. Liberty Apparel*, No. 99 Civ. 9033(RCC), 2002 WL 398663, at *1 (S.D.N.Y. Mar. 13, 2002) (hereinafter, "*Zheng I*"), and the Second Circuit's decision, *see Zheng v. Liberty Apparel*, 355 F.3d 61, 65 (2d Cir.2003) (hereinafter, "*Zheng II*").

Plaintiffs are twenty-six, non-English-speaking garment workers who worked in a factory at 103 Broadway in New York's Chinatown. Liberty Apparel is a garment manufacturer, and Nigri and Laniado are its two principals.

Plaintiffs were employed by several corporations (the "Contractor Corporations") that entered into contracts with Liberty Apparel to perform "assembly work" on Liberty Apparel garments. In this action, plaintiffs allege that Liberty Apparel, its principals, and the Contractor Corporations served as "joint employers" of plaintiffs, and, therefore, that they are jointly liable for their failure to pay plaintiffs wages and overtime compensation allegedly owed to plaintiffs under state and federal law.[2] Specifically, plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and New York Labor Law § 663(1) based upon defendants' alleged violations of (1) wage provisions, to wit, FLSA § 206 and Labor Law § 652(1); (2) overtime compensation provisions, to wit, FLSA § 207 and 12 NYCRR § 142–2.2; and (3) New York Labor Law § 345–a, which prohibits manufacturers from entering into garment labor contracts where they knew, or should have known, that the contractor failed to comply with the provisions of New York law that govern the payment of wages.[3] *See* Compl. ¶ 2; *Zheng v. Liberty Apparel*, 355 F.3d 61, 65 (2d Cir.2003).

## II. STANDARD OF REVIEW

The standards for summary judgment are well-settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Bronx Household of*

1. This case was reassigned from Judge Casey to the Honorable Kenneth M. Karas, District Judge, on May 21, 2007. The case was then reassigned to the undersigned on September 4, 2007.

2. On July 15, 2002, plaintiffs dismissed their claims against the Contractor Corporations.

3. Following *Zheng I*, plaintiffs did not appeal the dismissal of their claims under N.Y. Lab. Law § 191 and N.Y. Lab. Law § 193, nor did they appeal Judge Casey's denial of plaintiffs' cross-motion for summary judgment. *See Zheng II*, 355 F.3d at 66 n. 1. Therefore, this Court need not address plaintiffs' § 191 and § 193 claims or their cross-motion for summary judgment.

*Faith v. Bd. of Educ. of City of N.Y.,* 492 F.3d 89, 96 (2d Cir.2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC,* 494 F.3d 99, 103 (2d Cir.2007). As such, "[a] dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (internal citation omitted); *accord Binder & Binder PC v. Barnhart,* 481 F.3d 141, 148 (2d Cir.2007).

## III. DISCUSSION

Defendants seek summary judgment on the following grounds: First, in regard to plaintiffs' claims under FLSA and its New York statutory analogues, Labor Law § 652(1) and NYCRR § 142–2.2, defendants assert that there is no genuine issue as to whether Liberty Apparel was a joint employer of plaintiffs within the meaning of FLSA. Second, in regard to plaintiffs' § 345–a claims, defendants assert that there is no genuine issue as to whether defendants knew or should have known that the contractors that hired plaintiffs violated New York State wage and overtime laws. Finally, defendants assert that there is no genuine issue as to whether the individual defendants Nigri and Laniado

should be held responsible for the alleged violations of FLSA and New York law.

For the following reasons, the Court denies defendants' motion in its entirety, and finds, as to each of plaintiffs' claims, that there are genuine issues of material fact that cannot be resolved by this Court at the summary judgment stage.

### A. Plaintiffs' FLSA Claims

■ In regard to defendants' motion against plaintiffs' FLSA claims, the critical issue is whether plaintiffs have proffered sufficient evidence to demonstrate a genuine issue as to whether Liberty Apparel was a "joint employer" of plaintiffs within the meaning of the FLSA, even where Liberty Apparel did not directly employ plaintiffs. *See Zheng II,* 355 F.3d at 70 ("[A]n entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them."). In *Zheng II,* the Second Circuit instructed this Court to "determine whether the Liberty Defendants should be deemed to have been the plaintiffs' joint employer" based on six factors that it believed "the court [would] find illuminating in these circumstances," although the Court "is also free to consider any other factors it deems relevant to its assessment of the economic realities" underlying the parties' relationship. *Id.* at 71–72. When the six factors outlined in *Zheng II* are found to "weigh in plaintiffs' favor, they indicate that an entity has functional control over workers even in the absence of ... formal control," and therefore demonstrate that Liberty Apparel was a joint employer of plaintiffs. *Id.* at 72.

Moreover, the Second Circuit noted the "fact-intensive character of the joint employment inquiry," *id.* at 76 n. 13, and acknowledged that its decision set a high bar for defendants to obtain summary judgment against plaintiffs' FLSA claims: "In order to grant summary judgment for

defendants, the District Court would have to conclude that, even where both the historical facts and the relevant factors are interpreted in the light most favorable to plaintiffs, defendants are still entitled to judgment as a matter of law.... Should the District Court, on remand, deny summary judgment in favor of defendants, it will be incumbent upon the Court to conduct a trial." *Id.* at 76–77.

For the following reasons, the Court finds that, drawing all reasonable inferences in plaintiffs' favor, three of the six *Zheng II* factors weigh in plaintiffs' favor, and, therefore, summary judgment is inappropriate as to plaintiffs' FLSA claims.

### 1. First Factor

The first *Zheng II* factor is "whether Liberty's premises and equipment were used for the plaintiffs' work." *Zheng II,* 355 F.3d at 72. The Court finds that there is no genuine issue as to whether Liberty Apparel's "premises and equipment" were used for plaintiffs' work. Therefore, this factor does not weigh in favor of finding that Liberty Apparel was a joint employer of plaintiffs.

It is undisputed that plaintiffs did not perform work at the "premises" of Liberty Apparel. (*See* Pls.' 56.1 ¶ 17; Defs.' 56.1 ¶ 17.) However, plaintiffs assert that they effectively used Liberty Apparel's "equipment" in assembling garments. In support, plaintiffs have presented evidence in the record demonstrating that at least some of the items necessary to the garment production engaged in by plaintiffs was provided by Liberty Apparel. Specifically, plaintiffs point to the deposition testimony of Nigri, wherein he testified that Liberty Apparel supplied several items to the Contractor Corporations that were necessary to preparing the finished products, to wit: (1) the cut fabric from which the garments would be assembled (*see* Nigri Dep. at 99–102); (2) materials such as "labels," "zipper[s]," "buttons," and "shoul-

der pads" to affix to the assembled garments (*id.*); and (3) diagrams and written specifications for the assemblers to follow in constructing the garments (*see id.* at 120–25).

However, plaintiffs have failed to present *any* authority in support of the proposition that the term "equipment," as it was used in *Zheng II,* should be construed so broadly as to include the raw materials that are the subject of the contracting relationship. Rather, the weight of authority favors a more narrow view of the term. For instance, in *Chèn v. Street Beat Sportswear, Inc.,* 364 F.Supp.2d 269, 280 (E.D.N.Y.2005), the Honorable I Leo Glasser, District Judge, noted that the defendant-manufacturer had "provided the contractors with all materials, including the cut garment, the trimming, the hanger, the 'poly bag and labels" as well as "provided assembly instructions." Nevertheless, the court found that the plaintiffs used "separate premises and equipment" in performing their work.

Similarly, in *Rutherford Food Corp. v. McComb*—the case from which the Second Circuit in *Zheng II* "derived" this factor, *see Zheng II,* 355 F.3d at 72—the Supreme Court, in finding that the plaintiffs used the defendant's "equipment," focused solely upon the fact that the defendant provided the plaintiff-butchers with a room for cutting meat as well as barrels for storing the meat, and did not rely upon the fact that the defendant's also provided the plaintiffs with the raw material—*i.e.,* uncut meat—on which they performed their work. 331 U.S. 722, 725–26, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)

Moreover, the Court notes that plaintiffs' broad interpretation of the term "equipment"—that is, as including the raw materials on which plaintiffs perform their work—would weigh in favor of a joint employer finding in nearly every contracting

case involving the garment industry, including a significant number of cases where the parties are engaged in a "legitimate subcontracting relationship." *Zheng II*, 355 F.3d at 72. Therefore, the Court finds that plaintiffs were not using Liberty Apparel's "premises and equipment" and, therefore, this factor does not weigh in favor of finding that Liberty Apparel was a joint employer of plaintiffs.

### 2. Second Factor

The second *Zheng II* factor is "whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another." *Zheng II*, 355 F.3d at 72. Here, it is undisputed that the Contractor Corporations' business could shift from one manufacturer to another. (*See* May 13 Tr. at 20 ("[T]he contractor, we [plaintiffs] would acknowledge, at least had the opportunity and the ability to shift from one manufacturer to the other. We don't dispute that.").) Therefore, the Court finds that this factor does not support a finding that Liberty Apparel was a joint employer of plaintiffs.

In regard to the first two factors, the Court notes that, in *Zheng II*, the Second Circuit specifically cautioned that these two factors were only "a starting point in uncovering the economic realities of a business relationship," and, by themselves, were not dispositive on the joint employer issue. *See Zheng II*, 355 F.3d at 72. Thus, the Court proceeds to address the remaining four factors, three of which weigh in favor of a joint employer finding.

### 3. Third Factor

The third *Zheng II* factor concerns "the extent to which plaintiffs performed a discrete line-job that was integral to Liberty's process of production." *Zheng II*, 355 F.3d at 72. For the following reasons, the Court finds that there is a genuine issue of material fact as to whether plaintiffs performed a "discrete line-job" that was "integral to Liberty's process of production." *Id.* Therefore, drawing all reasonable inferences in plaintiffs' favor, this factor weighs in favor of finding that plaintiffs were "employees" of Liberty Apparel.

In *Zheng II*, the Second Circuit observed that it could not offer "firm guidance as to how to distinguish work that 'in its essence, follows the usual path of an employee,' from work that can be outsourced without attracting increased scrutiny under the FLSA." 355 F.3d at 73 (quoting *Rutherford*, 331 U.S. at 729, 67 S.Ct. 1473). Nevertheless, the Second Circuit outlined a continuum where, at one end, individuals performed work that "requires minimal training or equipment, and which constitutes an essential step in the producer's integrated manufacturing process," thereby signaling an employer-employee relationship, and, at the other end, individuals performed "work that is not part of an integrated production unit, that is not performed on a predictable schedule, and that requires specialized skills or expensive technology," thereby signaling a legitimate subcontracting or outsourcing relationship. *Zheng II*, 355 F.3d at 73.

Moreover, in conducting this analysis, the Second Circuit instructed courts to consider "both industry custom and historical practice." *Id.* Specifically, "if plaintiffs can prove that, as a historical matter, a contracting device has developed in response to and as a means to avoid applicable labor laws, the prevalence of that device may, in particular circumstances, be attributable to widespread evasion of labor laws." *Id.* at 74.

Here, plaintiffs have proffered sufficient evidence that they were engaged in labor that was "more like piecework than an enterprise that actually depended for success upon the initiative, judgment or foresight of the typical independent contractor," *Rutherford*, 331 U.S. at 730, 67 S.Ct.

1473, so as to demonstrate the existence of a genuine issue of material fact precluding summary judgment on this factor. Specifically, plaintiffs have proffered sufficient evidence—that is, sufficient to create a triable issue of fact—demonstrating that: (1) the work performed by plaintiffs was manual work—namely, sewing—that required little to no skill or training (*see* Vanegas Decl. ¶ 9(a)); (2) plaintiffs' work was an "essential step" in defendants' manufacturing process (*see* Defs.' 56.1 ¶ 13); (3) the assembly of garments was a straightforward task that could have been performed "in-house" by Liberty Apparel, *see id.* ¶ 9(b); and (4) plaintiffs performed work according to Liberty Apparel's instructions and under the supervision of defendants' representatives (*see id.*; Nigri Dep. at 99–102, 120–125; Lin Decl. ¶ 3.).

Moreover, in regard to the relevant "industry custom and historical practice," *Zheng II*, 355 F.3d at 73, plaintiffs have offered sufficient evidence to allow a reasonable jury to find in their favor on the issue of whether the "contracting device" used by defendants in this case "has developed in response to and as a means to avoid applicable labor laws," and therefore may be construed as an attempt to evade regulation. *Zheng II*, 355 F.3d at 74. Specifically, plaintiffs have satisfied their burden at this stage of the case by presenting declarations and reports from two expert witnesses regarding the purported development and modern use of the contracting device at issue—namely, the practice of manufacturers contracting out assembly work to garment contractors.

First, plaintiff's expert Luis Vanegas opines that, on the basis of his approximately fourteen years of experience as an investigator of the garment industry for the United States Department of Labor, the "principal factor" that leads modern manufacturers to use garment contractors "is not an economic one but, rather, is the notion that the [manufacturer] will not be subject to liability ... for wage and hour violations [to] which the workers hired by the contractor ... are subjected." (Vanegas Decl. ¶ 9(p).)

Second, plaintiff's expert Dr. Richard A. Greenwald, an Assistant Professor of History at the United States Merchant Marine Academy, opines, on the basis of his knowledge of the history of the garment industry, that, "[b]y the mid–1920s," approximately "three-quarters" of garment manufacturers "contracted out the assembly phase of production to middlemen who were the direct employers of the workers who assembled the garments," and that "[t]his contracting out of the assembly phase of garment production has remained a fixed feature of the garment industry since the 1920s." (Greenwald Decl. ¶¶ 6–8.) Moreover, Dr. Greenwald concludes that, historically, the "impetus" for this practice was manufacturers' desire to "escape" responsibility "for the wages and working conditions of the workers ... hired by a contractor to perform that part of the garment production." (*Id.* ¶ 8.)

Accordingly, the Court finds that there is a genuine dispute as to the facts underlying this factor—namely, whether plaintiffs' work was "integral" to Liberty Apparel's process of production as well as whether the "contracting device" at issue "has developed in response to and as a means to avoid applicable labor laws," and therefore may be construed as an attempt to evade regulation. *Zheng II*, 355 F.3d at 73; *see Chen*, 364 F.Supp.2d at 282 (finding that the plaintiffs' work was "integral" to the defendant's manufacturing process where, *inter alia*, "plaintiffs' sewing work in the assembly phase of production constituted a vital part of defendant's production of garments and functioned essentially as [defendant's] own sewing and pressing unit, merely located a few blocks away

from the main plant.") (internal quotation marks and citation omitted). Thus, construing the evidence in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, the Court finds that this factor weighs in favor of a finding of joint employment. *See Zheng II*, 355 F.3d at 76.

Defendants argue that the proffered submissions from plaintiffs' experts are both "patently unreliable" and "irrelevant," and, therefore, should not be considered by the Court in resolving defendants' motion for summary judgment. (Defs.' Reply Mem. at 6–7.) The Court rejects defendants' arguments.

■ In regard to Dr. Greenwald, the Court finds that his testimony is relevant because it is probative of the industry custom and historical practices of the garment industry—an issue specifically deemed material to the third factor set forth in the Second Circuit's decision in *Zheng II*, 355 F.3d at 73. Moreover, Dr. Greenwald's testimony is admissible as expert testimony under Rule 702 of the Federal Rules of Evidence and pursuant to the standard enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Dr. Greenwald is qualified as an expert on the topic of labor practices in the garment industry based on his extensive publications on this subject, his educational background, and his occupation, as outlined in his *curriculum vitae*. (*See* Greenwald Rept. at 22–25). In addition, his opinions are based on reliable historical data. Finally, his testimony is likely to assist the trier of fact in assessing "industry custom and historical practice" in the garment industry.[4] *See, e.g., Nimely v.*

*City of New York*, 414 F.3d 381, 396–97 (2d Cir.2005).

■ In regard to Mr. Vanegas, the Court also finds that his testimony is relevant to the "custom and historical practices inquiry" and that he is qualified as an expert under Rule 702 and *Daubert*. Mr. Vanegas is qualified as an expert based on his experience and knowledge gained as a compliance officer and investigator for the Department of Labor's Wage and Hour Division from 1987 to 2002, where he was charged with, *inter alia*, monitoring and enforcing garment manufacturers' compliance with FLSA's wage and hours requirements. (*See* Vanegas Decl. ¶¶ 4–8.) According to Mr. Vanegas, from 1999 through April 2002, he served as the Department of Labor's New York City District's Office Wage and Hour manager, where he supervised 30 labor investigators and remained involved in compliance with labor laws in the garment industry. (*Id.*) Mr. Vanegas also indicates that he left the Department of Labor in 2002 to work for private organizations that "monitor garment businesses' compliance with wage and hour requirements." (*Id.* ¶ 8 & n. 2.)

Furthermore, Mr. Vanegas' report and declaration are based upon reliable data and methodology—namely, his experiences in investigating manufacturers in the garment industry in New York and elsewhere in order to determine their compliance with federal wage and hours requirements. *See Chen*, 364 F.Supp.2d at 284 n. 7 (reaching a similar conclusion as to the data and methodology relied upon by Mr. Vanegas in preparing a report in that action). Finally, the Court concludes that Mr. Vanegas' testimony is likely to assist

---

4. The Court also notes that, in another case regarding the same contracting device at issue here, Judge Glasser found that Dr. Greenwald was qualified under Rule 702 to serve as an expert on labor practices in the garment industry, and that his testimony was relevant to the industry custom and historical practices inquiry outlined in *Zheng II*. *See Chen*, 364 F.Supp.2d at 283 n. 15.

the trier of fact in evaluating the "custom and historical practices" of the garment industry. *See Zheng II,* 355 F.3d at 72.

### 4. Fourth Factor

The fourth *Zheng II* factor is "whether responsibility under the contracts could pass from one subcontractor to another without material changes." *Zheng II,* 355 F.3d at 72. It is undisputed that, if Liberty Apparel switched to another contractor, plaintiffs would *not* have "continue[d] to do the same work [for Liberty Apparel] in the same place." *Zheng II,* 355 F.3d at 73; *see* May 13 Tr. at 21 (Plaintiffs' Counsel: "I think that, essentially, all the contractors were in the same position vis-a-vis Liberty and ... you could substitute one for the other...."). Thus, the Court finds that there is no genuine dispute as to the fact that plaintiffs worked for Liberty Apparel "only to the extent that their direct employer [was] hired by" Liberty Apparel, and, therefore, "this factor does not in any way support the determination that a joint employment relationship exists." *Zheng II,* 355 F.3d at 74.

### 5. Fifth Factor

The fifth *Zheng II* factor concerns "the degree to which the Liberty Defendants or their agents supervised plaintiffs' work." *Zheng II,* 355 F.3d at 72. For the following reasons, the Court finds that there is a genuine issue as to whether defendants' engaged in "extensive supervision" of plaintiffs' work, thereby exercising "effective control of the terms and conditions of the plaintiff[s'] employment...." *Zheng II,* 355 F.3d at 75 (citing *Rutherford,* 331 U.S. at 726, 67 S.Ct. 1473).

Plaintiffs have presented a substantial amount of evidence demonstrating that representatives of Liberty Apparel exercised "effective control" over plaintiffs' employment through close supervision of plaintiffs' work. *Id.* Specifically, various plaintiffs have submitted declarations wherein they indicate, *inter alia,* that two

representatives of Liberty Apparel engaged in the following conduct:

(1) They "monitored" plaintiffs' work by visiting the factory two to four days a week for up to three hours a day;

(2) They inspected individual garments prepared by the workers for mistakes;

(3) They provided direct instructions to workers on correcting mistakes in garments;

(4) They exhorted plaintiffs to work harder and faster; and

(5) They promised workers that, if they finished a certain number of garments, the Liberty Apparel representatives would bring the workers' pay to them.

(*See* Luo Decl. ¶¶ 3–6; Yang Decl. ¶¶ 5–6; Lin Decl. ¶¶ 3–5; Lam Decl. ¶¶ 8–10; Yang Decl. ¶¶ 7–10; Dong Decl. ¶¶ 5–7; Zheng Decl. ¶¶ 6–8.) The above-cited evidence establishes a genuine issue of material fact as to whether defendants' supervision of plaintiffs exceeded the monitoring of "contractual warranties of quality and time of delivery" that is commonplace in legitimate subcontracting relationships and, instead, constituted sufficiently close supervision so as to indicate defendants' "effective control" over the conditions of plaintiffs' employment. *Zheng II,* 355 F.3d at 75.

In response to plaintiffs' submissions regarding this factor, defendants argue that: (1) Judge Casey resolved this factor against plaintiffs in the first summary judgment decision and, therefore, *res judicata* bars re-litigation of this issue; (2) Nigri has testified that Liberty Apparel employed only one "quality control" monitor who was directed to make brief visits to the Contractor Corporations' factories (Nigri Decl. ¶¶ 14, 22, 24, 25); and (3) even assuming *arguendo* the truth of plaintiffs' assertions, the supervision described by plaintiffs in this action establishes that defendants neither "kept close touch on the

operation," as in *Rutherford*, 331 U.S. at 730, 67 S.Ct. 1473, nor supervised plaintiffs during the entirety of their working day, as in *Chen v. Street Beat Sportswear, Inc.*, 364 F.Supp.2d at 287. (*See* Defs.' Supp. Mem. at 4–5). The Court finds that defendants' arguments fail to establish that there is no genuine issue of material fact as to defendants' "effective control" of plaintiffs' working conditions. *Zheng II*, 355 F.3d at 75.

▮▮ First, the Second Circuit vacated Judge Casey's decision regarding plaintiffs' FLSA claims and the analogous state law claims. *See Zheng II*, 355 F.3d at 79. A "judgment vacated or set aside has no preclusive effect." *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir.1992); *see, e.g.*, *Motorola Credit Corp. v. Uzan*, 509 F.3d 74, 78 (2d Cir.2007);

Second, Nigri's assertions as to the number and the conduct of Liberty Apparel employees at the factory directly contradicts plaintiffs' sworn assertions regarding the Liberty Apparel representatives. This is precisely the type of material factual dispute that cannot be resolved at the summary judgment stage.

Third, the Court rejects defendants' argument that, assuming *arguendo* the truth of plaintiffs' assertions, the purported level of supervision in this case is not sufficiently "close" to withstand summary judgment, as it was in *Rutherford* and *Chen*. Defendants fail to cite any authority in support of the proposition that the factual circumstances found in *Rutherford* and *Chen* established the *minimal* level of supervision necessary to support a FLSA claim. Rather, it is clear that plaintiffs have sufficiently demonstrated that defendants engaged in "extensive supervision" of plaintiffs' work so that a reasonable jury could find in plaintiffs' favor on this issue. *See Zheng II*, 355 F.3d at 72.

Accordingly, the Court finds that there are several genuine issues of material fact

preventing summary judgment on this factor. Thus, construing the evidence in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, the Court finds that this factor weighs in favor of finding that Liberty Apparel was a joint employer of plaintiffs. *See Zheng II*, 355 F.3d at 76.

### 6. Sixth Factor

The sixth *Zheng II* factor is "whether plaintiffs worked exclusively or predominantly for the Liberty Defendants." *Zheng II*, 355 F.3d at 72. For the following reasons, the Court finds that there is a genuine issue of material fact regarding the portion of plaintiffs' work that was performed for Liberty Apparel.

The Second Circuit has indicated that, in order for this factor to weigh in plaintiffs' favor, plaintiffs' must perform more than a "mere[ ]" majority of their work for Liberty Apparel, but, rather, must work "exclusively or predominantly" on Liberty Apparel's garments. *Zheng II*, 355 F.3d at 75. In their respective declarations submitted to the Court, plaintiffs variously assert that they performed approximately "a large majority" (Zheng Decl. ¶ 4), "[m]ore than two-thirds" (Yang Decl. ¶ 3), "70 percent" (Lam Decl. ¶ 5; Dong Decl. ¶ 4), or "three quarters" (Luo Decl. ¶ 3; Lin Decl. ¶ 3) of their work for Liberty Apparel. Thus, construing this evidence in the light most favorable to plaintiffs, the Court considers these submissions as indicating that plaintiffs performed approximately 70% to 75% of their work for Liberty Apparel.

In response, defendants submit the declaration of defendant Nigri, wherein he asserts that plaintiffs performed "only 10% to 15%" of their work on Liberty Apparel items. (*See* Nigri Decl. ¶ 28.) Nigri appears to have derived this figure from his review of individual plaintiffs' handwritten notes and records. (*See id.*) Nigri's as-

sertions clearly contradict those of plaintiffs and, therefore, present a disputed issue of fact that this Court is unable to resolve at the summary judgment stage.

Defendants also assert that, even assuming *arguendo* the truth of plaintiffs' assertions, the purported amount of work plaintiffs performed for Liberty Apparel "constitute[d] a mere majority...." (Defs.' Reply Mem. at 6.) However, defendants have failed to present any support for the proposition that the portion of plaintiffs' work purportedly performed for Liberty Apparel—namely, 70% to 75%—constitutes a "mere majority" of work under *Zheng II*. Rather, it is clear that a reasonable jury could find, on the basis of the evidence proffered by plaintiffs, that plaintiffs performed work "predominantly" for Liberty Apparel. *See Zheng II*, 355 F.3d at 75.

Accordingly, the Court finds that there is a genuine issue of material fact as to whether plaintiffs performed work "exclusively or predominantly" for Liberty Apparel. Thus, construing the evidence in the light most favorable to plaintiffs, and drawing all reasonable inferences in their favor, the Court finds that this factor weighs in favor of a finding of joint employment. *See Zheng II*, 355 F.3d at 76.

7. Balancing the *Zheng II* Factors:

In order to grant summary judgment, this Court "need not decide that *every* factor weighs against [a finding] of joint employment." *Zheng II*, 355 F.3d at 77. However, where, as here, half of the factors weigh in favor of a finding that Liberty Apparel was a joint employer of plaintiffs, the Court finds summary judgment on the "ultimate issue of FLSA coverage"

is inappropriate. *Zheng II*, 355 F.3d at 76 n. 13. Thus, because there are genuine disputes as to material facts underlying three of the six factors outlined in *Zheng*, the Court denies defendants' motion for summary judgment against plaintiffs' FLSA claims.

B. Plaintiffs' Claims under New York Labor Law § 652(1) and NYCRR § 142–2

■ Defendants' motion against plaintiffs' claims under New York Labor Law § 652(1) and NYCRR § 142–2 also fails for the same reasons discussed above. As the Second Circuit observed in *Zheng II*, the success of plaintiffs' claims under New York Labor Law § 652(1) and NYCRR § 142–2—like plaintiffs' claims under FLSA—"is dependent on a finding of joint employment," and, in analyzing this issue, New York courts look to similar factors as did the court in *Zheng II* when analyzing "joint employment relationships."[5] *See Zheng II*, 355 F.3d at 78. Therefore, because the Court has concluded that there is a genuine issue of material fact as to whether Liberty Apparel was a joint employer of plaintiffs under FLSA, that conclusion similarly requires the denial of defendants' motion against plaintiffs' state law claims.

C. Plaintiffs' Claims under New York Labor Law § 345–a

In *Zheng II*, the Second Circuit also "reinstated" plaintiffs' claims under New York Labor Law § 345–a. *See* 355 F.3d at 79. Defendants now seek summary judgment against such claims. In response, plaintiffs argue that the "law of the case"

---

5. The Court also notes that defendants have asserted, both in their written briefs and during oral argument before the Court, that the standards for determining Liberty Apparel's "joint employer" status are "identical" under New York State and federal law, and that the success of defendants' motion against both types of claims is predicated on the same issue—defendants' joint employer status. (*See* Defs.' Reply Mem. at 8; May 13 Tr. at 62–63, 71.)

doctrine requires this Court to reject defendants' motion. For the following reasons, the Court finds that the "law of the case" doctrine does not apply, but, nevertheless, rejects defendants' motion against the § 345–a claims.

### 1. Law of the Case

■ As an initial matter, the Court rejects plaintiffs' argument that the "law of the case" doctrine requires this Court to deny defendants' motion as to plaintiffs' § 345–a claims. (*See* Pls.' Mem. at 28.) In *Zheng I*, Judge Casey found that "[p]laintiffs ... have presented sufficient evidence to create an issue of fact" as to defendants' liability under § 345–a; ultimately, however, Judge Casey declined to exercise supplemental jurisdiction over such claims, as the court had dismissed plaintiffs' federal claims. *Zheng I*, 2002 WL 398663, at *9. Thus, Judge Casey's conclusion regarding the merits of defendants' motion against the § 345–a claims was clearly *dictum*, and, therefore, should not be afforded preclusive effect as the law of this case. *See Carroll v. Lessee of Carroll*, 57 U.S. (16 How.) 275, 286–87, 14 L.Ed. 936 (1853) (finding that, if a point of law "might have been decided either way without affecting any right brought into question, then, according to the principles of the Common Law, an opinion on such a question is not a decision ....") (cited with approval in *Jimenez v. Walker*, 458 F.3d 130, 142, 143 (2d Cir.2006)); *see also Schwabenbauer v. Bd. of Educ. of City School Dist. of City of Olean*, 777 F.2d 837, 842 (2d Cir.1985) (finding that conclusions voiced in dicta does not bind the court's subsequent rulings)

■ Moreover, even assuming *arguendo* that Judge Casey's statement in *Zheng I* was not *dictum*, it should not be accorded preclusive effect as the law of this case because *Zheng I* was vacated on appeal. "[W]here a court has vacated an earlier order, the doctrine of the law of the case no longer applies." *Schwartz v. Chan*, 142 F.Supp.2d 325, 330 (E.D.N.Y.2001) (citing *Johnson v. Bd. of Ed.*, 457 U.S. 52, 53–54, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982)) ("Because we have vacated the Court of Appeals' judgments ... the doctrine of the law of the case does not constrain either the District Court or ... the Court of Appeals."). In *Zheng II*, the Second Circuit specifically held that "[t]he District Court's judgment dismissing ... the N.Y. Labor Law § 345–a claim is therefore vacated...." *Zheng II*, 355 F.3d at 79–80. Thus, whatever the substance of Judge Casey's findings as to defendants' motion against the § 345–a claims, that judgment has been vacated and, therefore, the law of the case doctrine does not apply.

Accordingly, the Court proceeds to evaluate the merits of defendants' motion against the § 345–a claims, and finds that defendants' motion must fail.

### 2. Defendants' Motion Against Plaintiffs' § 345–a Claims

■ For the following reasons, the Court finds that plaintiffs have presented sufficient evidence to withstand defendants' motion for summary judgment against the § 345–a claims.

Unlike FLSA, § 345–a does *not* require a finding of joint employment. Rather, the statute imposes liability on any manufacturer "who contracts or subcontracts with another manufacturer or contractor for the performance of any apparel industry service ... and who knew or should have known with the exercise of reasonable care or diligence of such other manufacturer's or contractor's failure to comply with article six [regarding the payment of wages] or nineteen [regarding New York's minimum wage provisions] of this chapter in the performance of such service shall be liable for such failure." N.Y. Labor Law § 345–a(1).

Here, plaintiffs have proffered sufficient evidence to create a genuine issue as to whether Liberty Apparel "knew or should had known" that the Contractor Corporations were violating New York wage provisions. Specifically, plaintiffs have presented evidence demonstrating that: (1) Liberty Apparel contracted with the Contractor Corporations "for the performance of [an] apparel industry service," N.Y. Labor Law § 345–a(1); (2) Liberty Apparel representatives engaged in close supervision of plaintiffs' work; and (3) plaintiffs told Liberty Apparel's representatives on multiple occasions that plaintiffs were not being paid for contracting work they had performed for Liberty Apparel. (*See* Bing Decl. ¶ 6; Lin Decl. ¶ 5; Zheng Decl. ¶ 8.)

Therefore, based on this evidence, and drawing all reasonable inferences in plaintiffs' favor, the Court finds that a reasonable jury could find that Liberty Apparel violated § 345–a—namely, that Liberty Apparel entered into a contract for an "apparel industry service" and that, through its representatives, Liberty Apparel "knew or should have known with the exercise of reasonable care or diligence of such other ... contractor's failure to comply" with New York's wage and overtime compensation provisions.

Defendants fail to offer any persuasive arguments in support of their motion against the § 345–a claims. In their original moving papers, defendants merely offered conclusory denials of plaintiffs' evidence regarding the notice received by Liberty Apparel's representatives of the nonpayment of wages to plaintiffs. (*See* Defs.' Mem. at 21.) However, such unsupported denials of plaintiffs' evidence, cannot, as a matter of law, satisfy defendants' burden at the summary judgment stage.

Moreover, based on statements made by defendants in their supplemental brief and at oral argument, it appears that defen-dants have withdrawn their motion as to the *substance* of plaintiffs' claims under § 345–a. (*See* Defs.' Supp. Br. at 8.) Instead, defendants now ask that, in the event that the Court dismisses plaintiffs' federal claims, the Court decline to exercise supplemental jurisdiction over the § 345–a claims. However, because this Court has denied defendants' motion against the FLSA claims, it rejects defendants' request to decline jurisdiction over plaintiffs' state law claims.

### D. Plaintiffs' Claims Against the Individual Defendants

Defendants move for summary judgment against plaintiffs' claims concerning the individual defendants, Nigri and Laniado. For the following reasons, the Court finds that there are genuine issue of material fact precluding summary judgment on these claims.

#### 1. Law of the Case

■ As an initial matter, the Court rejects plaintiffs' argument that the law of the case doctrine requires this Court to reject the individual defendants' motion. In *Zheng I*, Judge Casey found that "Nigri and Laniado's alleged lack of operational control over the non-moving Defendants is not dispositive on the issue of whether they may be individually liable under the FLSA," and, therefore, "examine[d] Nigri, Laniado and Liberty's alleged liability under the FLSA jointly." 2002 WL 398663, at *6. However, in *Zheng II*, the Second Circuit vacated the judgement in *Zheng I* dismissing the FLSA claims, and reinstated the FLSA and state law claims against the "Liberty Defendants"—a group that *included* Nigri and Laniado. *See Zheng II*, 355 F.3d at 79–80. Therefore, because the holding in *Zheng I* regarding the individual defendants' liability was vacated by the Second Circuit, the law of the case doctrine does not apply to that holding, *see Johnson*, 457 U.S. at 53–54, 102 S.Ct. 2223,

and this Court must conduct an independent analysis of the issue.

## 2. The Individual Defendants' Motion

### a. Legal Standard

In cases where a corporation is a worker's joint employer, individual officers or directors of that corporation may also "be deemed employers under the FLSA where 'the individual has overall operational control of the corporation, possesses an ownership interest in it, controls significant functions of the business, or determines employees' salaries and makes hiring decisions.'" *Ansoumana v. Gristede's Operating Corp.*, 255 F.Supp.2d 184, 192 (S.D.N.Y.2003) (internal citation omitted); *see Jiao v. Shi Ya Chen*, No. 03 Civ. 0165(DF), 2007 WL 4944767, at *10 (S.D.N.Y. Mar. 30, 2007); *see also Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 678 (1st Cir.1998) ("At bottom, [the] economic reality analysis focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate .employees and to prefer the payment of other obligations and/or the retention of profits."). "The Second Circuit has not developed a specific test for determining an individual officer's liability, stating instead that 'the overarching concern is whether the alleged employer possessed the power to control the workers in question.'" *Jiao*, 2007 WL 4944767, at *10 (quoting *Herman v. RSR Sec. Servcs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999)). The individual officer's control, however, need not have been "absolute": "[c]ontrol may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control do not diminish the significance of its existence."[6] *Herman*, 172 F.3d at 139 (internal quotation marks and citations omitted); *see also Zheng II*, 355 F.3d at 69 ("[T]he broad language of the FLSA ... demands that a district court look beyond an entity's formal right to control the physical performance of another's work before declaring that the entity is not an employer under the FLSA."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir.1988) ("An employer does not need to look over his workers' shoulders every day in order to exercise control.").

### b. Analysis

The Court finds that plaintiffs have proffered sufficient evidence that Nigri and Laniado exercised "operational control" over Liberty Apparel so as to create a genuine issue of material fact as to their liability under FLSA and its state law analogues. *Ansoumana*, 255 F.Supp.2d at 192. Specifically, plaintiffs have proffered evidence demonstrating that:

(1) Nigri and Laniado were co-owners and the sole officers of Liberty Apparel (Nigri Dep. at 7–10; Laniado Dep. at 6–12);

(2) Nigri was responsible for the "day-to-day" management of the company and Laniado was responsible for "sales and merchandising" (*id.* at 12);

(3) both Nigri and Laniado were aware, at a minimum, of the existence of the contracting relationship whereby plaintiffs performed garment assembly work for Liberty Apparel (*see* Nigri Dep. at 52–57, 62–67, 72–77; Laniado Dep. at 26–32, 35–39, 44–46); and

(4) both Nigri and Laniado had visited the premises of "sewing contractor[s]" hired by Liberty Apparel (*see* Nigri

---

**6.** *The parties assert, and this Court so finds,* that the analysis for individual liability under both FLSA and New York State law are identical, at least under the circumstances of the instant case.

Dep. at 62–67, 72–77; Laniado Dep. at 35–39, 44–46).

Defendants fail to offer any persuasive arguments in response to this evidence. Rather, in regard to Nigri, defendants merely assert that, "[f]or the same reasons [Liberty Apparel] is not a joint employer . . . defendant Nigri is also not an employer." (Defs.' Supp. Br. at 8.) This argument therefore fails for the same reasons discussed above in regard to Liberty Apparel's motion for summary judgment.

Moreover, in regard to Laniado, defendants assert that Laniado could not have exercised "operational control" over Liberty Apparel because he (1) "was a minority shareholder" and (2) "did not work in the production part of Liberty." (*Id.*) However, while there may be distinctions to be drawn at trial as to the individual defendants' respective responsibilities, the Court finds, construing the above-cited evidence in the light most favorable to plaintiffs and drawing all reasonable inferences in their favor, that there are genuine issues of material fact as to whether the individual defendants jointly or independently exercised "operational control" over Liberty Apparel. In other words, a reasonable jury could find that Nigri and/or Laniado are subject to individual liability for the alleged violations of FLSA and New York State law. *See Moon v. Kwon,* 248 F.Supp.2d 201, 237 (S.D.N.Y.2002).

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied in its entirety.

SO ORDERED.